ST. MARY'S MEDICAL CENTER OF EVANSVILLE, INCORPORATED, Plaintiff–Appellee,

v.

DISCO ALUMINUM PRODUCTS COMPANY, INCORPORATED, n/k/a Luminar Products, Incorporated, Defendant–Appellant.

No. 91–2544.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1992.

Decided Aug. 5, 1992.

Patrick A. Shoulders (argued), Ziemer, Stayman, Weitzel & Shoulders, Evansville, Ind., for plaintiff-appellee.

R. Stephen LaPlante, Mark E. Miller, Stone, Keck, LaPlante & Folz, Evansville, Ind., Cyrus L. Booker, M. Clark Spoden (argued), Dearborn & Ewing, Nashville, Tenn., for defendant-appellant.

Before CUDAHY, COFFEY, and MANION, Circuit Judges.*

MANION, Circuit Judge.

St. Mary's Medical Center sued Disco Aluminum Products, Inc. for breaching a warranty in a construction contract. A little more than eight months after St. Mary's filed its complaint, Disco requested arbitration pursuant to the contract and asked the district court to stay the case pending arbitration pursuant to § 3 of the Federal Arbitration Act, 9 U.S.C. § 3. St. Mary's resisted on the ground that Disco had waived its right to arbitration and asked the district court to stay arbitration. The district court agreed with St. Mary's that Disco had waived arbitration, denied Disco's motion for a stay pending arbitration, and granted St. Mary's motion to stay arbitration. Disco appealed pursuant to 9 U.S.C. § 16(a)(1)(A), which authorizes interlocutory appeals from refusals to grant stays under § 3. See *Perera v. Siegel Trading Co.*, 951 F.2d 780, 782–83 (7th Cir.1992). Because we agree that Disco waived its contractual right to arbitration, we affirm the district court's decision.

I.

In 1982, St. Mary's entered contracts with Nelson–Brantley Glass Contractors, Inc. and Disco to perform renovation work on its hospital building. Nelson–Brantley and Disco are subsidiaries of the same parent. Both contracts included provisions making any disputes arising from the con-

---

* This opinion has been circulated among the judges of this court in regular active service, pursuant to Circuit Rule 40(f). A majority did not favor a rehearing *en banc* on the question of a possible conflict with other circuits over the appropriate standard for reviewing a district court's decision that a litigant has (or has not) waived a contractual arbitration provision. Circuit Judge Joel M. Flaum and Circuit Judge Kenneth F. Ripple voted to rehear the case *en banc*.

tracts "subject to arbitration upon the written demand of either party."

The construction work did not turn out to St. Mary's satisfaction, so in July 1989, St. Mary's sued Nelson–Brantley for breach of contract. In September 1989, St. Mary's filed an amended complaint against Nelson–Brantley. Nelson–Brantley filed an answer but the answer did not mention the contract's arbitration clause.

The litigation between St. Mary's and Nelson–Brantley proceeded over the next ten months without Nelson–Brantley ever mentioning arbitration. During this time, St. Mary's realized that it should also have sued Disco. In July 1990, St. Mary's filed another amended complaint naming Nelson–Brantley and Disco as defendants. In November, the defendants (who were represented by the same attorneys) filed a joint motion to dismiss or for summary judgment. The motion did not claim that the dispute with St. Mary's was arbitrable. Instead, the defendants sought dismissal of St. Mary's case on the merits. The motion raised two issues regarding Disco. First, the motion stated that St. Mary's claim was barred by a one-year limitations period in the contracts. Resolving this issue required the court to interpret the contract between St. Mary's and Disco to determine if the contract contained any limitations provision that barred St. Mary's claim. The motion also stated that St. Mary's had not stated, or had not mustered sufficient evidence to prove, any claim against Disco.

St. Mary's responded to the motion to dismiss and the district court took the motion under advisement. Meanwhile, the litigation proceeded. In January 1991, the magistrate judge held a status conference at which he set discovery and settlement deadlines and a September 9, 1991 trial date. The defendants did not mention arbitration at the status conference. In April, Disco filed its preliminary statement of contentions. That statement did not mention arbitration.

In April 1991, the district court denied the defendants' motion to dismiss. Three weeks later, on May 14, the defendants filed a joint answer to St. Mary's complaint in which they mentioned arbitration for the first time by raising it as an affirmative defense. The defendants filed a motion to stay the case. pending arbitration and St. Mary's filed a motion to .stay arbitration. The district court denied the defendants' motion and granted St. Mary's motion. The court held that the defendants had waived their right to arbitration for three reasons: the defendants' delay in demanding arbitration; their participation in discovery; and their decision to file their motion to dismiss. Only Disco has appealed the district court's decision not to allow arbitration.

## II.

Federal policy favors the enforcement of private arbitration agreements. See *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225–26, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Midwest Window Systems, Inc. v. Amcor Industries, Inc.*, 630 F.2d 535, 536 (7th Cir.1980). This policy is embodied in the Federal Arbitration Act, which provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2; see *McMahon*, 482 U.S. at 226, 107 S.Ct. at 2337. As can be seen from § 2's language, however, the federal policy favoring arbitration is not an absolute preference for arbitration over litigation anytime an arbitration agreement exists. Courts may refuse to enforce arbitration agreements on a number of grounds, and federal courts have consistently held that among those grounds is waiver of the right to arbitrate. See, e.g., *Morrie & Shirley Mages Foundation v. Thrifty Corp.*, 916 F.2d 402, 405 (7th Cir.1990); *Midwest Window*, 630 F.2d at 536; *National Foundation for Cancer Research v. A.G. Edwards & Sons*, 821 F.2d 772, 774 (D.C.Cir.1987) ("*NFCR*").

Waiver can either be express or inferred. Disco did not expressly waive its right to arbitrate in this case, so the question is whether the district court could infer waiver from Disco's actions. No rigid rule exists as to what constitutes a waiver of

the right to arbitrate. Instead, the issue depends on the circumstances of each particular case. See *Morrie & Shirley Mages Foundation,* 916 F.2d at 405; *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 712 F.2d 270, 273 (7th Cir.1983); *Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638, 641 (7th Cir.1981); accord *NFCR,* 821 F.2d at 774. The essential question is whether, based on the circumstances, the alleged defaulting party has acted inconsistently with the right to arbitrate. *Morrie & Shirley Mages Foundation,* 916 F.2d at 405; *Dickinson,* 661 F.2d at 641.

This brings us to the question of our standard of review. Disco, based on cases from several other circuits, contends that we should review the district court's decision de novo. Somewhat surprisingly, St. Mary's, which is defending the district court's judgment and which one might suppose would therefore argue for a more deferential standard, agrees with Disco that de novo review is appropriate.

■ The caselaw from other circuits generally supports the parties' agreement that de novo review is appropriate. See, e.g., *NFCR,* 821 F.2d at 774; *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 817 F.2d 250, 251–52 (4th Cir.1987); *Fisher v. A.G. Becker Paribas, Inc.,* 791 F.2d 691, 693 (9th Cir.1986); *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985). We have been unable to find a case expressly applying a more deferential standard of review. Our opinion in *Midwest Window* does contain a comment toward its end that the court considered the district court's decision to allow arbitration "to have been an abuse of discretion." 630 F.2d at 537. This suggests that we were applying a more deferential standard of review. However, no other Seventh Circuit case has picked up on this comment or even addressed the proper standard of review. There is no other indication in *Midwest Window* itself that the standard of review was an issue in the case. Standing alone, *Midwest Window* provides slim support for deferential review of a district court's decision regarding waiver.

However, *Midwest Window*'s offhand suggestion that deferential review is appropriate is more consistent with Seventh Circuit law regarding standards of review generally than is the position that de novo review is appropriate. The waiver question is, if not strictly a factual question, an application of a legal standard to a set of facts. In this circuit, "[t]he application of a legal standard to undisputed facts is classified as a fact for purposes of delimiting the respective spheres of the trial and appellate courts. We defer to the factfinder's application just as we do to his findings with regard to the facts to which to apply the standard. In either case the appellate standard is clear error." *Central States, Southeast and Southwest Areas Pension Fund v. Slotky,* 956 F.2d 1369, 1373 (7th Cir.1992); see also *Tyson v. Jones & Laughlin Steel Corp.,* 958 F.2d 756, 759 (7th Cir.1992); *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 933 (7th Cir.1989) (citing cases) (en banc).

■ There are two reasons why we deferentially review a district court's application of legal standards to facts. First, the trier of fact is closer to the facts than we are and therefore better able to assess their legal significance. Second, an appellate court's primary function is to establish and articulate legal rules. When the answer to a question is closely bound up to the facts of a particular case, this function is not at stake because the resolution of the question in a particular case is not likely to establish uniform rules for future decision. See *Mars Steel,* 880 F.2d at 933–34; *United States v. McKinney,* 919 F.2d 405, 419 (7th Cir.1990) (Posner, J., concurring). Both these factors are at play here. This court has emphasized that waiver of the right to arbitration depends on the facts of each particular case. Also, the district judge was much more familiar with the proceedings in his court than we can be, so he is in a much better position to assess whether what Disco did in that court was inconsistent with its right to arbitration. Given these factors, it makes little sense for three appellate judges to redo the district judge's work. Therefore, consistent with this circuit's general position on stan-

dards of review, we will review the district court's decision for clear error. That means that we will reverse only if we reach a "firm and definite conviction" that the district court made a mistake. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

■ We are not convinced the district court clearly erred. Disco argues that it only waited ten months to demand arbitration, a delay it characterizes as not substantial. Perhaps ten months is not, standing alone, a substantial delay. A party needs time to assess its options. Weighing options is not normally inconsistent with the exercise of any of those options, and we can envision situations where a party may properly take months before deciding whether to litigate or demand arbitration. But Disco's delay did not stand by itself. During the ten months after it was sued, Disco did more than just weigh its options. It participated in the litigation, participation that included filing a motion to dismiss or for summary judgment, while at the same time never even mentioning arbitration until after it lost its motion. Moreover, Disco and Nelson–Brantley were represented by the same attorneys; all their filings were joint filings. Nelson–Brantley had been in the case for almost two years without ever mentioning arbitration, which could lead the court reasonably to conclude that Nelson–Brantley had decided to place its fortunes in the district court's, rather than an arbitrator's, hands. Given Nelson–Brantley's and Disco's joint representation and the failure of Disco, like Nelson–Brantley, to ever mention arbitration, the court could reasonably conclude that Disco had adopted Nelson–Brantley's position. The district court could reasonably conclude from all of this that Disco acted inconsistently with any intent to assert its right to arbitrate.

Especially telling was Disco's motion to dismiss. Submitting a case to the district court for decision is not consistent with a desire to arbitrate. A party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result in that forum, seek another forum. Disco cites two Second Circuit cases that it says stand for the proposition that filing a motion to dismiss does not waive the movant's right to arbitrate. See *Rush*, 779 F.2d at 888; *Sweater Bee By Banff, Ltd. v. Manhattan Industries, Inc.*, 754 F.2d 457, 461 (2d Cir.1985). But Disco did not move only to dismiss; it also moved, alternatively, for summary judgment. *Sweater Bee* distinguished motions to dismiss from summary judgment motions, stating that a summary judgment motion would "preclude any arbitration … by virtue of waiver." 754 F.2d at 465.

More importantly, both *Rush* and *Sweater Bee* involved motions to dismiss in complex cases involving multi-count complaints containing claims that were arguably non-arbitrable. See *id.* at 466; *Rush*, 779 F.2d at 888. In such a case, a motion to dismiss may not be inconsistent with a right to arbitrate; it might be necessary for the defendant to file the motion both to sort out the claims before it can intelligently decide whether to arbitrate and to protect its rights in court if the arguably non-arbitrable claims do turn out to be non-arbitrable. This case did not present that dilemma. St. Mary's case was a simple breach of contract case; Disco does not assert that there was any dispute that St. Mary's claim was arbitrable.

Even so, Disco argues that its motion provided no basis for finding waiver because the motion did not submit the case to the district court on the "merits." Instead, Disco says that it only wanted a court to determine whether St. Mary's had even raised a claim that had to be determined on the merits. Disco's asserted distinction between "pleading deficiencies" and the "merits" is strained. Disco's motion asserted that a one-year contractual limitation period barred St. Mary's claim and that St. Mary's had not raised a prima facie case. A decision in Disco's favor on either issue would have ended the case just as surely as a judgment entered after a trial. Moreover, both issues were appropriate for arbitration. An arbitrator would be capable of determining if the facts St. Mary's pleaded or had mustered to defend against

summary judgment were sufficient to state a claim that Disco breached its contract by not performing as the contract required. Cf. *Kayne v. PaineWebber, Inc.,* 684 F.Supp. 978, 981 n. 4 (N.D.Ill.1988). Similarly, an arbitrator would have been capable of interpreting the contract between Disco and St. Mary's to determine if the contract contained any limitations period that barred St. Mary's claim; "[t]he business of arbitrators, commercial or labor, is to interpret contracts." *Lancaster v. Norfolk and Western Ry. Co.,* 773 F.2d 807, 814 (7th Cir.1985).

Disco finally asserts that even if it did act inconsistently with its right to arbitrate, the district court's finding of waiver is incorrect because none of its actions caused any prejudice to St. Mary's. In essence, Disco argues that prejudice is essential to a finding of waiver.

Several circuits have held that a defaulting party's actions cannot amount to waiver absent prejudice to the non-defaulting party. See, e.g., *Fraser,* 817 F.2d at 252; *Fisher,* 791 F.2d at 694; *Rush,* 779 F.2d at 887. The notion that prejudice is indispensable to a finding of waiver is premised generally on the "strong federal policy favoring enforcement of arbitration agreements." *Fisher,* 791 F.2d at 694; see also *Rush,* 779 F.2d at 887. Because of this strong federal policy, parties asserting waiver bear a "heavy burden" and courts should not "lightly infer" waiver. Hence, action inconsistent with the right to arbitrate, no matter how inconsistent, does not waive the right to arbitrate unless it prejudiced the party asserting the waiver. See *Fisher,* 791 F.2d at 694; *Rush,* 779 F.2d at 887.

■ However, not all circuits hold that prejudice is indispensible to waiver. In *NFCR,* the D.C. Circuit held that while prejudice is a relevant factor to consider in deciding whether a party has waived its right to arbitrate, "waiver may be found absent a showing of prejudice." 821 F.2d at 777. The D.C. Circuit's approach is consistent with this court's approach. While none of our cases has stated explicitly that a court may find waiver absent prejudice,

that principle is implicit in our repeated emphasis that waiver depends on all the circumstances in a particular case rather than on any rigid rules and that prejudice is but one relevant circumstance to consider in determining whether a party has waived its right to arbitrate. *Morrie & Shirley Mages Foundation,* 916 F.2d at 405; *Dickinson,* 661 F.2d at 641 & n. 5; *Midwest Window,* 630 F.2d at 537. The closest we have ever come to stating that prejudice is necessary to a finding of waiver is our statement in *Ohio–Sealy* that "[p]rejudice and delay are significant factors the court must consider" in determining whether to find waiver. See 712 F.2d at 272. But that a court must consider prejudice does not necessarily mean that there can be no waiver absent prejudice. If prejudice is relevant, even if not dispositive, the district court should consider it just as it should consider any other relevant factor. But where it is clear that a party has forgone its right to arbitrate, a court may find waiver even if that decision did not prejudice the non-defaulting party.

■ This conclusion is not inconsistent with the "strong federal policy" favoring arbitration. Congress's goal in enacting the Arbitration Act was to place arbitration agreements " 'upon the same footing as other contracts, where [they] belong.' " *Dean Whitter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985) (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess., (1924)). In other words, the federal policy embodied in the Arbitration Act is a policy favoring enforcement of contracts, not a preference for arbitration over litigation. See *id.* at 219–21, 105 S.Ct. at 1241–43; see also *NFCR,* 821 F.2d at 774; *Fisher,* 791 F.2d at 699 (Wiggins, J., concurring). Therefore, we should treat a waiver of the right to arbitrate the same as we would treat the waiver of any other contract right. See *NFCR,* 821 F.2d at 774.

The situation Disco faced when confronted with St. Mary's suit is analogous to the situation a party to a contract faces when he must decide whether to disregard the nonoccurrence of a condition in a contract.

For example, an insurer may have a right to insist that an insured give notice of loss before the insurer incurs any obligation to the insured. If the insurer decides to go ahead and defend its insured (by, for example, conducting settlement negotiations) despite the insured's failure to give notice of loss, the insurer's election to defend will likely preclude it from resisting the claim because of the insured's failure, even if the insured did not rely on (i.e., was not "prejudiced" by) the election. See E. Allen Farnsworth, *Contracts*, § 8.5, at 377–78 (2d ed. 1990). Similarly, like the insurer that had a right to insist on notice of loss before defending, Disco had a right to insist on arbitration rather than litigation. We have held that the district court could find that Disco elected to proceed with litigation rather than arbitrate (or, in other words, acted inconsistently with its right to arbitrate by proceeding with litigation). Disco has therefore waived arbitration. There is no more reason to insist that Disco's election be binding only if it prejudiced St. Mary's than to insist that the insurer's election to defend its insured despite the failure to give proof of loss be binding only if the insured relied on the insurer's action.

There is another way to look at this case. St. Mary's voluntarily chose to litigate. Since Disco also voluntarily chose to litigate it, in essence, agreed with St. Mary's to litigate rather than arbitrate. If the federal policy embodied in the Arbitration Act is based on the enforcement of private agreements, we see no reason why the parties' agreement not to arbitrate is any less enforceable than their earlier agreement to arbitrate, despite the lack of "prejudice" to St. Mary's. See *Fisher*, 791 F.2d at 699 (Wiggins, J., concurring).

In any event, the district court could reasonably conclude that St. Mary's was prejudiced by Disco's litigation activity. Disco filed interrogatories and requests to admit and participated in the depositions of two of St. Mary's principal witnesses. By delaying its demand for arbitration, Disco was able to obtain discovery it would not necessarily have been entitled to in an arbitration proceeding. Cf. *Burton v. Bush,*

614 F.2d 389, 390 (4th Cir.1980) (parties who agree to arbitrate relinquish the right to liberal pretrial discovery allowed by the federal rules; while arbitration panel may subpoena documents and witnesses, litigants have no comparable privilege). Moreover, Disco's delay caused St. Mary's the expense of litigating in court, as well as (when the time this appeal has taken is included) making St. Mary's endure two years of what would have been (had Disco succeeded) wasted litigation.

For the reasons set forth, we affirm the district court's decision.

AFFIRMED.