30 F.3d 136
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Jack SCHWARTZ, as Trustee of the Schwartz Medical Group
Employee Pension Plan, Plaintiff-Appellee,
v.
James D. OBERWEIS, Defendant-Appellant.
 No. 93-4054.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 25, 1994.
Decided June 23, 1994.
 
 1
 Before CUMMINGS and MANION, Circuit Judges, and MILLER, District Judge.*
 
 ORDER
 
 2
 In this interlocutory appeal, James D. Oberweis ("Oberweis") challenges the district court's denial of his motion to stay litigation and compel arbitration. For the following reasons, we affirm.
 
 
 3
 Although the issue in this case is whether the district court should have ordered arbitration, some background facts are helpful. Thus, the following facts are taken from the plaintiff's complaint and the district court's order. Jack Schwartz ("Schwartz") was trustee for the Schwartz Medical Group Employee Plan ("Plan"), a qualified retirement plan with approximately six participants and assets of approximately four million dollars. In his capacity as trustee, Schwartz opened a brokerage account with Oberweis Securities, Inc. ("OSI"), a securities broker-dealer firm owned and controlled by Oberweis. Over a period of years, the Plan, through Oberweis and OSI, invested in conservative, high-quality instruments, including both stocks and bonds.
 
 
 4
 Sometime in 1987, Oberweis sought to expand the investment operations of OSI. Under the rules of the Securities and Exchange Commission and the National Association of Securities Dealers, this required significant investment of "equity capital" in order to satisfy the requirements of the "net capital rule" found in 17 C.F.R. Sec. 240.15c3-1(a) of the regulations, promulgated pursuant to the Securities Exchange Act of 1934, 15 U.S.C. Secs. 78a-7811. To this end, Oberweis, on or about October 30, 1987, approached Schwartz and convinced him to sign a secured demand note ("SDN") and enter into a Secured Demand Note Collateral Agreement for Equity Capital ("the agreement"). Under the terms of the agreement, Schwartz, as trustee of the Plan, executed an SDN with a face value of $400,000 in favor of OSI. Although this agreement, at first blush, resembled a loan from the Plan to OSI, it was, in fact, an investment by the Plan in OSI. Under the SDN, the Plan was obligated to tender $400,000 to OSI upon the SDN's maturity. In the meantime, as collateral for its obligation, the Plan pledged to OSI blue chip stocks which, at the time, had a market value of $928,826.41.[1] In return for the Plan's SDN, OSI transferred to the Plan's account 40,000 shares of OSI stock, and further agreed to pay the Plan a minimal return of 2% per annum on $400,000 for the duration of the agreement. The agreement further provided that upon notice and demand by OSI, the Plan would agree to pay over its $400,000 obligation under the SDN; if the Plan could not meet its obligation, then OSI had the right to look to and liquidate any and all of the pledged securities to secure payment under the SDN. Moreover, the agreement would be subordinated to the claims of other customers and creditors of OSI. The length of this agreement was three years, at the end of which OSI was to return the SDN and the pledged securities.
 
 
 5
 Shortly after the parties entered into the agreement, Oberweis, or someone under his direction at OSI, sold all of the pledged securities without first providing the required notice to the Plan (or to Schwartz as trustee) for payment of the $400,000 under the secured demand note. Had the notice been given, Schwartz, on behalf of the Plan, could have paid over the $400,000, and, in exchange, received back the pledged securities.
 
 
 6
 The Plan would never again see its securities or for that matter the proceeds generated by their sale. Shortly after July of 1990, OSI filed its petition for bankruptcy under Chapter 7 of the Bankruptcy Code. Thinking that his investment under the agreement would be protected by the Security Investor Protection Act ("SIPA"), 15 U.S.C. Secs. 78aaa-78111, Schwartz, on behalf of the Plan, submitted a claim to the trustee in bankruptcy handling the liquidation of OSI. On or about October 30, 1990, the trustee in bankruptcy notified Schwartz that SIPA protection was unavailable for any losses under the agreement. Later, a SIPA trustee, who was appointed to administer the OSI liquidation, initiated adversary proceedings against the Plan. Following extensive litigation in the bankruptcy court, the SIPA trustee and the Plan entered into a settlement agreement which disposed of any claims by the Plan against OSI. The settlement agreement did not release Oberweis individually from any suit brought by Schwartz on behalf of the Plan.
 
 
 7
 On August 24, 1992, Schwartz, on behalf of the Plan, filed an eight-count action against Oberweis in the United States District Court for the Northern District of Indiana, alleging, among other things, violations of Indiana's Blue Sky laws, breach of fiduciary duty, conversion, negligent misrepresentation and breach of contract. Attached as Exhibit A to the complaint is a copy of the secured demand note. The note contains the following arbitration clause:
 
 
 8
 Any controversy arising out of or relating to this Agreement may be submitted to and settled by arbitration pursuant to the By-Law and rules of the NASD. The Broker-Dealer and the Lender shall be conclusively bound by such arbitration.
 
 
 9
 R. 1, Ex. A at 201 (emphasis added).
 
 
 10
 Over the course of the next fourteen months, the litigation proceeded without Oberweis ever mentioning the possibility of arbitration. On October 7, 1992, Oberweis responded to Schwartz's complaint by filing a motion to dismiss. Nowhere in his motion did Oberweis claim that the dispute should be submitted to arbitration. Instead, the motion sought dismissal of the complaint on the merits. During the pendency of this motion, the parties engaged in extensive discovery, including requests for the production of documents and the taking of depositions. On June 22, 1993, the district court granted Oberweis' motion to dismiss with respect to Schwartz's claim for negligent misrepresentation, but denied the motion with respect to the other claims in the complaint. On July 7, 1993, Oberweis filed his answer to Schwartz's complaint, yet nowhere in his seventeen-page answer did he plead arbitration as an affirmative defense. Following the filing of its answer, Oberweis filed a motion to extend discovery (which was granted), a motion to bar the testimony of Schwartz's expert witness and served notices to take the depositions of five witnesses.
 
 
 11
 It was not until October 15, 1993,--over a year after Schwartz filed the complaint--that Oberweis, pursuant to section 3 of the Federal Arbitration Act, 9 U.S.C. Secs. 1-16, filed his motion to stay litigation so that the matter could be submitted to arbitration. In a memorandum filed in support of his motion, Oberweis relied upon the permissive arbitration clause contained in the secured demand note, which, as Oberweis puts it, he had just discovered by reading Exhibit A of Schwartz's complaint. In response, Schwartz filed a motion and memorandum opposing Oberweis' request for a stay, arguing that by relying solely upon the permissive arbitration clause contained in the agreement entered into between the parties, Oberweis had failed to prove the existence of an agreement--which mandated arbitration. In the alternative, Schwartz argued that even if the parties had entered into such a mandatory arbitration agreement, Oberweis, by actively participating in the litigation in the district court, had waived any rights to arbitration. In his reply brief, Oberweis claimed to have just received from Schwartz an arbitration agreement that, in Oberweis' opinion, mandated that the present dispute between OSI and the Plan be submitted to arbitration. This agreement, attached as Exhibit A to Oberweis' reply brief, is an undated form cash account agreement entered into between OSI and Schwartz in his individual capacity. The agreement also contains a clause mandating that any and all disputes arising out of this agreement be submitted to arbitration.[2] In ruling on the motion and briefs before it, the district court simply assumed, without deciding, that the present dispute was subject to a binding arbitration agreement. However, the district court, relying on this court's decision in St. Mary's Medical Ctr. v. Disco Alum. Prod., 969 F.2d 585 (7th Cir.1992), concluded that Oberweis, by engaging in extensive litigation and discovery, had waived any purported right to arbitration. Consequently, the district court denied Oberweis' motion to stay. Oberweis appealed the district court's denial pursuant to 9 U.S.C. Sec. 16(a)(1)(A), which authorizes this interlocutory appeal.
 
 
 12
 In St. Mary's, this court held that a party to an arbitration agreement may nevertheless waive his right to arbitration if he acts in a manner inconsistent with that right. St. Mary's involved a defendant who, although a party to a binding arbitration agreement, waited until ten months after the plaintiff had filed its complaint before filing a motion to compel arbitration. During that ten-month period of time, the defendant submitted the merits of the dispute to the district court by filing a motion to dismiss. The defendant also filed interrogatories and requests for admissions, and participated in the depositions of two of the plaintiff's principal witnesses. It was not until the district court entered its order denying the defendant's motion to dismiss that the defendant decided to redirect the matter to arbitration. The district court denied the defendant's motion to stay on the ground that the defendant, by actively engaging in discovery and filing its motion to dismiss, had acted inconsistently with any right to submit the matter to arbitration. In reviewing the district court's denial, this court, reviewing the district court's determination for clear error, see St. Mary's, 969 F.2d at 589, held that the district court did not clearly err in determining that the defendant had impliedly waived its right to arbitration. Of particular importance to our holding was the fact that the defendant, by filing its motion to dismiss, had already submitted the case to the district court for a decision on the merits: "Submitting a case to the district court for decision is not consistent with a desire to arbitrate. A party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result ..., seek another forum." St. Mary's, 969 F.2d at 589.
 
 
 13
 Applying St. Mary's, we find that the district court was not clearly erroneous in its determination that Oberweis acted inconsistently with any right to arbitrate this dispute. Oberweis waited fourteen months before filing his motion to compel arbitration. Prior to that, Oberweis had actively litigated the matter below, as evidenced by the numerous requests for discovery, as well as his filing a motion to dismiss and an answer, all without ever mentioning the possibility of arbitration. In fact, it was not until he saw the handwriting on the wall with respect to the merits of his claim that Oberweis got the idea that this matter was subject to arbitration. But by actively litigating this matter, without ever mentioning a desire to arbitrate, Oberweis' actions could lead the district court to the conclusion that Oberweis "had decided to place [his] fortunes in the district court's, rather than the arbitrator's, hands." St. Mary's, 969 F.2d at 589. Consequently, the district court committed no error in determining that Oberweis' actions indicated a waiver of any right to arbitrate that may have existed under the agreement.[3]
 
 
 14
 At oral argument, Oberweis argued that his actions should not constitute a waiver because it was not until October of 1993 that he first learned, through discovery, that he even had a right to arbitrate this dispute. According to Oberweis, he had believed from the time Schwartz filed his complaint that this dispute was subject to permissive arbitration; however, it was not until Schwartz, in response to Oberweis' request for discovery, delivered an undated, form cash collateral agreement entered into between OSI and Schwartz and which contained a mandatory arbitration clause, that Oberweis' suspicions were confirmed that the present matter was subject to arbitration. However, this is no excuse for Oberweis' untimeliness in waiting until August of 1993--a full year after Schwartz filed his complaint--before ever making any attempt to locate this document.[4] Had Oberweis been that confident that this document existed, the better course would have been to have immediately sought discovery of the document, and, if that proved unsuccessful, to move for a temporary stay of the litigation in the district court pending the document's eventual discovery. But as it stands, Oberweis chose to submit the merits of this case to the district court, and it was only a year later, after an unfavorable ruling on his motion to dismiss, that he took any steps to enforce what he believed to be his rights to arbitration. As correctly noted by the district court, this behavior indicates the type of forum-shopping prohibited by this court in St. Mary's. Consequently, the district court's decision to deny Oberweis' motion to stay litigation and compel arbitration is
 
 
 15
 AFFIRMED.
 
 
 
 *
 Hon. Robert L. Miller, Jr., District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 The Plan would continue receiving any dividend income from the pledged securities
 
 
 [2]
 The relevant portion of this arbitration clause provides:
 The undersigned agrees, and by carrying an account for the undersigned you agree, that ... all controversies which arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers.
 R. 59 at 3 (emphasis added).
 
 
 [3]
 Based on the permissive language of the arbitration clause contained in the agreement which gave rise to the present dispute, we have serious doubts over whether this dispute was subject to arbitration at all. However, given our affirmance on the issue of waiver we need not resolve this issue
 
 
 [4]
 In his various memoranda filed in support of, as well as in defense of, his motion to compel arbitration, Oberweis suggested that due to Schwartz' failure to timely comply with discovery, Oberweis gave up all hope of ever obtaining a copy of any document which would conclusively establish his belief that he was entitled to have the matter subjected to arbitration. At oral argument, however, Oberweis retreated from his position that Schwartz had not acted completely in good faith in response to Oberweis' requests for discovery