**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Skylar Blume, Virgil Dowis, Rhi Greer, Jonathan Hudson, Natalie Mann, Mya Ourada, Braden Terrill, & Aneil Thripathi, Respondents,

v.

Starbucks Corporation & Melissa Morris, Appellants.

Appellate Case No. 2023-001506

———

Appeal From Anderson County
R. Lawton McIntosh, Circuit Court Judge

———

Unpublished Opinion No. 2025-UP-274
Heard June 11, 2025 – Filed July 30, 2025

———

**REVERSED**

———

Reginald Wayne Belcher and Hannah Davis Stetson, both of Turner Padget Graham & Laney, P.A., of Columbia, for Appellant Melissa Morris.

C. Mitchell Brown and Blake Terence Williams, both of Nelson Mullins Riley & Scarborough, LLP, of Columbia; and William Harrell Foster, III, and Benjamin Tradd Hepner, both of Littler Mendelson, P.C., of Greenville, all for Appellant Starbucks Corporation.

Matthew R. Ozment, of Grove Ozment LLC, of Greenville; Mary Joyce Carlson, of Washington, D.C.; Daniel M. Rosenthal, Michael P. Ellement, and Charlotte H. Schwartz, all of James & Hoffman, P.C., of Washington, D.C.; and Richard P. Rouco, of Quinn, Connor, Weaver, Davies & Rouco LLP, of Birmingham, AL, all for Respondents.

---

**PER CURIAM:** This appeal is about the denial of a request to compel arbitration. Six months after several Starbucks employees (Employees) asserted claims for defamation and abuse of process, Starbucks Corporation and Melissa Morris (collectively, Management) filed motions to compel arbitration. After a hearing, the circuit court denied the motions. Management contends the circuit court erred in finding Management waived the right to compel arbitration, that Management did not timely argue gateway issues were delegated to the arbitrator, and that Employees' claims were outside the scope of the arbitration agreement. We agree and reverse. Management's conduct does not establish waiver, and the circuit court erred in determining gateway issues that the agreement delegated to an arbitrator.

## STANDARD OF REVIEW

"Appeal from the denial of a motion to compel arbitration is subject to de novo review." *Chasserau v. Global-Sun Pools, Inc.*, 363 S.C. 628, 631, 611 S.E.2d 305, 307 (Ct. App. 2005). Similarly, "determining whether a party waived its right to arbitrate is a legal conclusion subject to a de novo review." *Liberty Builders, Inc. v. Horton*, 336 S.C. 658, 664, 521 S.E.2d 749, 753 (Ct. App. 1999).

## WAIVER

"It is generally held that the right to enforce an arbitration clause may be waived." *Gen. Equip. & Supply Co. v. Keller Rigging & Const., SC, Inc.*, 344 S.C. 553, 556, 544 S.E.2d 643, 645 (Ct. App. 2001). The parties dispute which test applies when determining waiver. Management points us to the familiar language used in arbitration cases and says this remains valid with the exception that prejudice is no longer part of the analysis. *See Rhodes v. Benson Chrysler-Plymouth, Inc.*, 374 S.C. 122, 126, 647 S.E.2d 249, 251 (Ct. App. 2007) (explaining waiver involves examining the length of time between the commencement of the action and the attempt to compel arbitration, the extent of discovery conducted, and any prejudice to the nonmoving party). Employees claim waiver can be inferred from anything

suggesting Management was not standing on the right to compel arbitration and any speech or conduct by Management that is inconsistent with compelling arbitration.

We decline to settle this dispute. We are convinced Management's conduct does not establish waiver under either framework.

We begin with Employees' waiver test. In our view, neither Starbucks nor Morris took actions inconsistent with the right to compel arbitration. Starbucks explicitly raised the arbitration agreement in its answer. Then, in relatively quick succession, Management filed motions to refer the case to the business court, to dismiss the case as preempted based on the assertion Employees' claims fell under the jurisdiction of the National Labor Relations Board (the NLRB),[1] and then to compel arbitration. These actions were consistent with the arbitration agreement. The agreement itself explicitly states that any claim falling under the NLRB's jurisdiction is exempt from arbitration.

Employees rely on *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co., Inc.* in support of the argument that filing a motion to dismiss is sufficient to establish waiver. 969 F.2d 585 (7th Cir. 1992). There, the Seventh Circuit found a waiver of the right to arbitrate because the party seeking arbitration "participated in the litigation, participation that included filing a motion to dismiss or for summary judgment, while at the same time never even mentioning arbitration until after it lost its motion." *Id.* at 589. In reaching that conclusion, the court emphasized "Disco did not move only to dismiss; it also moved, alternatively, for summary judgment." *Id.* However, the court acknowledged a distinction between motions to dismiss and summary judgment motions as it noted "that a summary judgment motion would preclude any arbitration by virtue of waiver." *Id.* (citation modified). The court also recognized that "a motion to dismiss may not be inconsistent with a right to arbitrate" when the motion is filed in "complex cases involving multi-count complaints containing claims that [are] arguably non-arbitrable." *Id.*

We do not read *St. Mary's* as pointing to a different result for this case. Here, Employees filed a multi-count complaint containing claims that potentially fell under the NLRB's jurisdiction and would not properly belong in arbitration. We

---

[1] *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959) (holding state and federal courts "must defer to the exclusive competence of the [NLRB]" when an activity is covered by sections 7 or 8 of the National Labor Relations Act).

respectfully disagree with Employees' argument that asking a judge, rather than an arbitrator, to decide a complicated issue like preemption is inconsistent with the right to compel arbitration.

We similarly disagree with the argument that seeking to transfer the case to the business court amounts to actively using the state's litigation machinery in a way that is inconsistent with seeking to compel arbitration. In *General Equipment*, this court found a request to refer an action to a master-in-equity did not qualify as waiver. *See* 344 S.C. at 557, 544 S.E.2d at 645 (characterizing a request to refer a matter to a master-in-equity as a "standard procedure" and finding that request insufficient to demonstrate waiver). And, as already noted, Management's explanation that it believed the business court was the best forum for adjudicating its jurisdictional argument about preemption is sensible and not inconsistent with the request to compel arbitration.

Our conclusion does not change if we apply Management's proposed waiver analysis. In *General Equipment*, this court held that appearing before the circuit court on two occasions, even when paired with limited discovery, did not amount to waiver. *See id.* (noting that "[p]rior to the filing of the motion to compel arbitration, the parties availed themselves of the circuit court's assistance twice[:] [t]he parties consented to an order substituting the defendant and an order referring the action to the Master-in-Equity"). Notably, in that case, this court found that the conduct at issue failed to establish waiver because "neither party availed itself of the circuit court's assistance in such a manner as to cause a lengthy delay or cause either party to incur significant attorney's fees." *Id.* at 557, 544 S.E.2d at 645–46.

Employees concede that Management had not engaged in discovery other than objecting to discovery requests on the basis that this case was subject to the arbitration agreement. *Compare id.* at 557, 544 S.E.2d at 645 (finding conduct did not establish waiver when "the parties were involved in litigation for less than eight months" and "[t]he litigation consisted of routine matters and limited discovery which did not involve the taking of depositions or extensive interrogatories"), *with Rhodes*, 374 S.C. at 128, 647 S.E.2d at 252 (holding conduct did establish waiver and explaining "[w]hat distinguishes this case from the *General Equipment* line of cases, however, is the extensive discovery engaged in by Rhodes and especially Benson, as well as the fact that the trial was imminent").

Moreover, Management's conduct did not cause delay, nor did Management wait a "substantial length of time" before asserting its right to arbitrate. *Rhodes*, 374 S.C. at 126, 647 S.E.2d at 251 ("What is 'a substantial length of time' varies from one

case to the next . . . ."). Management moved to compel arbitration roughly six months after Employees commenced this action. *See id.* (comparing *Liberty Builders*, 336 S.C. at 666, 521 S.E.2d 753–54 (holding litigation conduct demonstrated waiver when the parties sought the circuit court's assistance roughly forty times in two-and-a-half years), with *Rich v. Walsh*, 357 S.C. 64, 67, 590 S.E.2d 506, 504 (Ct. App. 2003) (finding litigation does not establish waiver when the parties conducted limited discovery and one fifteen-minute deposition in a period of thirteen months)); *see also St. Mary's,* 969 F.2d at 589 (finding Disco waived its right to arbitrate because Disco's counsel "had been in the case for almost two years without ever mentioning arbitration, which could lead the court reasonably to conclude that [counsel] had decided to place its fortunes in the district court's, rather than an arbitrator's, hands"). If a period of thirteen months where at least one deposition was taken did not establish waiver, then a period of six months where Management refused to participate in discovery certainly falls well short of establishing waiver in this case.

Accordingly, we find the circuit court erred in finding Management waived the right to compel arbitration.

## DELEGATION OF GATEWAY ISSUES TO ARBITRATOR

The circuit court made alternative rulings for declining to compel arbitration. First, it found Employees' claims fell outside the scope of the arbitration agreement. Second, it found Management did not timely raise the argument that the agreement delegated any disputes about the agreement's scope to the arbitrator. Management asserts these alternative rulings are incorrect. We agree.

"[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 67 (2019). "[A]n 'agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the [trial] court to enforce, and the [Federal Arbitration Act (FAA)] operates on this additional arbitration agreement just as it does on any other.'" *Id.* at 68 (quoting *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010)). "The FAA presumes parties intend that the court, rather than an arbitrator, will decide 'gateway' issues related to arbitration, including whether the arbitration agreement is valid and enforceable and whether it covers the parties' dispute." *Doe v. TCSC, LLC*, 430 S.C. 602, 608, 846 S.E.2d 874, 877 (Ct. App. 2020). "The parties may, of course, delegate these gateway issues to the arbitrator as long as there is 'clear and unmistakable' evidence of such delegation." *Id.* "[I]f a valid agreement exists, and if the agreement delegates

the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein*, 586 U.S. at 69.

If there is a delegation clause, a court retains its ability to determine the validity of that clause only if "the party resisting arbitration has made a direct and discrete challenge to the validity and enforceability of the delegation clause specifically, rather than the arbitration agreement as a whole." *Doe*, 430 S.C. at 608, 846 S.E.2d at 877. Here, it is undisputed Employees did not assert a direct and specific challenge to the delegation clause; rather, Employees argued Management waived any argument related to the delegation clause by not raising it until a "reply brief" filed the night before the hearing on the motions to compel arbitration.

We respectfully reject the idea that Management did not timely raise the delegation clause to the circuit court. Management raised the issue before the hearing and the issue was discussed on the merits at the hearing. As far as we are aware, there is no authority supporting the idea that an argument is not preserved at the circuit court just because it was raised in a "reply brief."

Delegation clauses can be written any number of different ways. These differences can affect what issues have and have not been delegated to the arbitrator. In *Doe*, for example, this court found that "the parties empowered the arbitrator to resolve only the limited gateway issues of 'the interpretation and scope of th[at] [a]rbitration [a]greement, and the arbitrability of the claim or dispute,'" but "did not delegate the decision of whether the [a]greement was valid and enforceable." *Id.* at 608–09, 846 S.E.2d at 877. The fact that the delegation clause did not send disputes about the arbitration clause's validity to the arbitrator was a critical and meaningful distinction from a key precedent involving a delegation clause that gave the arbitrator "the exclusive authority to resolve any dispute relating to the 'enforceability' of the agreement 'including . . . any claim that all or any part of th[e] [a]greement [was] void or voidable.'" *Id.* at 609, 846 S.E.2d at 877 (first and third alterations in original) (quoting *Rent-A-Ctr.*, 561 U.S. at 68); *see also Rent-A-Ctr.*, 561 U.S. at 72 (explaining that without a specific challenge to the delegation clause itself, the court must treat the delegation "as valid under [section] 2 [of the FAA]," and must enforce it).

This delegation clause states, subject to exceptions listed in the agreement, the parties agree that "the Arbitrator – and not a court or agency – shall have exclusive authority to receive any dispute regarding the formation, interpretation, applicability, enforceability, or implementation of this Agreement, including any claim that all or part of this agreement is void or voidable." We read this language as expressing a

clear and unmistakable intent to have all gateway issues decided by the arbitrator. *See First S. Bank v. Rosenberg*, 418 S.C. 170, 180, 790 S.E.2d 919, 925 (Ct. App. 2016) ("The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties and, in determining that intention, the court looks to the language of the contract." (quoting *Watson v. Underwood*, 407 S.C. 443, 454–55, 756 S.E.2d 155, 161 (Ct. App. 2014)); *see also Henry Schein*, 586 U.S. at 68 ("We must interpret the [FAA] as written, and the [FAA] in turn requires that we interpret the contract as written. When the parties' contract delegates [gateway questions] to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the [gateway] issue."). We therefore conclude the circuit court "possess[ed] no power to decide the arbitrability issue" because the arbitration agreement delegated gateway questions to the arbitrator. *Henry Schein*, 586 U.S. at 68–69 ("That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless" as the "'agreement is to submit [covered claims] to arbitration, not merely those which the court will deem meritorious.'" (quoting *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 650 (1986))).

## OUTRAGEOUS TORT EXCEPTION

Employees contend the circuit court correctly denied the motion to compel arbitration because their claims satisfy the outrageous tort exception to arbitration. We respectfully disagree.

"The exception establish[es] that outrageous torts, which [are] unforeseeable to the reasonable consumer and legally distinct from the contractual relationship between the parties, [are] not subject to arbitration." *Parsons v. John Wieland Homes and Neighborhoods of the Carolinas, Inc.*, 418 S.C. 1, 9, 791 S.E.2d 128, 132 (2016).

As noted in the previous section, the question of whether an arbitration agreement applies to a claim is a gateway issue that can be delegated to an arbitrator. *See Doe*, 430 S.C. at 616, 846 S.E.2d at 881 ("Because the outrageous and unforeseen tort exception relates to the interpretation and scope of the arbitration contract and the arbitrability of the dispute—rather than where the arbitration contract was formed or is valid—precedent requires that we honor the parties' choice to leave the issue of the exception to the arbitrator."); *see also Palmetto Wildlife Extractors, LLC v. Ludy*, 435 S.C. 690, 702, 869 S.E.2d 859, 865 (Ct. App. 2022) (finding delegating the question of arbitrability to the arbitrator includes delegation of "claims arising out of conduct that Respondents assert was unforeseeable").

Here, the agreement explicitly delegates questions of interpretation and applicability to the arbitrator as it states "the Arbitrator – and not a court or agency – shall have exclusive authority to resolve any dispute regarding the formation, interpretation, applicability, enforceability, or implementation of this Agreement."  Given the agreement's unambiguous language, we find "precedent requires that we honor the parties' choice to leave the issue of the exception to the arbitrator." *Doe*, 430 S.C. at 616, 846 S.E.2d at 881.

**REVERSED.**

**THOMAS, HEWITT, and CURTIS, JJ., concur.**