Steve M. HINSON, E. Gwyn Deaver, and Joseph J. Haynes, Plaintiffs,

v.

JUSCO CO., LTD., a Japanese Corporation; Jusco (U.S.A.), Inc., a Delaware Corporation; Laura Ashley Holdings PLC, a United Kingdom Corporation; Laura Ashley (U.S.A.) Inc., a Delaware Corporation; and Revman Industries Inc., a Delaware Corporation, Defendants.

No. 2:94–1983–18.

United States District Court, D. South Carolina, Charleston Division.

Nov. 4, 1994.

Joseph C. Wilson, IV, Robert H. Hood, Carl E. Pierce, II, Charleston, SC, for plaintiffs.

William C. Cleveland, Thomas S. Tisdale, Jr., Charleston, SC, James E. Lady, Columbia, SC, for defendants.

## ORDER

NORTON, District Judge.

This matter is before the court on the September 15, 1994 Motion of Defendants Revman Industries Inc. and Laura Ashley Inc. for a Stay of Proceedings Herein Pending Arbitration. The court held a hearing on this matter on October 31, 1994.

### I. BACKGROUND

Plaintiffs were corporate executives with Revman Industries Inc., ("Revman") a New York-based linen company with operations in South Carolina that was formed with the backing of Laura Ashley Holdings PLC ("Laura Ashley–UK") to produce merchandise for Laura Ashley shops. Plaintiffs began their employment with Revman by signing Employment Agreements in August 1988 with Revman's predecessor, Dash Industries Inc. These Employment Agreements, which were drafted by counsel for Laura Ashley–UK, contained arbitration clauses providing that "[a]ny controversy or claim arising out of or relating to this Agreement . . . shall be settled by binding arbitration in the City of New York in accordance with the Rules of the American Arbitration Association." (Employment Agreement ¶ 12.) The Employment Agreements provided a term of employment from August 15, 1988 through January 31, 1992.

In 1989, Laura Ashley–UK caused its United States subsidiary, Laura Ashley (U.S.A.) Inc. ("Laura Ashley Inc."), to wholly acquire Revman. (Compl. ¶ 13; Defs.' Mem. Supp.Mot.Stay at 6.)

In 1990, Laura Ashley–UK, facing financial difficulties, sought out a Japanese partner to provide cash. In late 1990, JUSCO Co., Ltd.

("JUSCO–Japan") offered to purchase fifteen percent of the equity of Laura Ashley–UK and agreed to have its subsidiary, JUSCO (U.S.A.) Inc. ("JUSCO–USA"), purchase nearly half of Laura Ashley Inc.'s interest in Revman.[1] (Compl. ¶ 16.) At the same time, Revman, at the direction of JUSCO–Japan and Laura Ashley–UK, sold one percent of its shares to each of the Plaintiffs. (Compl. ¶ 17; Defs.'Mem.Supp.Mot.Stay at 6.)

On November 26, 1990, Plaintiffs and Revman executed Amendatory Agreements, which among other things, extended the terms of employment from January 1992 through January 1994, increased each Plaintiff's base salary, and provided for stock and cash bonuses. The Amendatory Agreements did not alter the effect of the arbitration clause in the Employment Agreements.[2]

At the end of 1993, JUSCO–USA and Laura Ashley Inc., which together owned virtually all Revman shares at the time, were considering a sale of their interests in Revman to various third parties. (Defs.'Mem.Supp.Mot.Stay at 5.) On December 24, 1993, Plaintiffs and Revman executed Change of Control Agreements, which acknowledged the following conditions then in existence: (1) Plaintiffs' terms of employment were to expire on January 29, 1994; (2) Laura Ashley Inc. and JUSCO–USA had decided to sell Revman and were actively seeking a buyer; (3) Plaintiffs' assistance and cooperation were considered necessary; (4) Revman intended to offer Plaintiffs new employment contracts to take effect on January 30, 1994; and (5) Revman wished to provide for Plaintiffs in the event their employment was terminated or their conditions of employment changed adversely in the change of control. (Change of Control Agreement at

1. The Complaint states that *"JUSCO–Japan* also agreed to purchase 47.5% of Laura Ashley–USA's interest in Revman." (Compl. ¶ 16, emphasis added.) Taking the Complaint as a whole, however, the court believes that Plaintiffs intended to say that JUSCO–Japan caused *JUSCO–USA* to purchase 47.5% of Laura Ashley–USA's interest in Revman.

2. Also on November 26, 1990, Plaintiffs and all Defendants (except Revman) signed Shareholders Agreements, which outlined terms and conditions of stock ownership effective upon the pending recapitalization of Revman. Plaintiffs' Ninth Cause of Action—Breach of Contract Accompanied by a Fraudulent Act—asserts a violation of the Shareholders Agreements. Because the Shareholders Agreements contain a choice of forum clause specifying that "any legal action or proceeding arising hereunder shall be brought . . . in the State of New York," Plaintiffs have agreed that they must litigate the Ninth Cause of Action in New York. Therefore, the Ninth Cause of Action is not subject to this Order.

1.) The Change of Control Agreements, which were drafted by Laura Ashley–UK, contained no arbitration clause, but specified that the Employment Agreements were "deemed to continue until the earlier of a Change of Control or April 30, 1994."[3] (Change of Control Agreement ¶ 8.) The Change of Control Agreements also provided that, in case of conflict, its provisions "supersede the conflicting provisions of the Employment Agreement." (Id. ¶ 12.)

During the early months of 1994, JUSCO–Japan and Laura Ashley–UK sought buyers for their subsidiaries' shares in Revman. Eventually, they agreed that JUSCO–USA would purchase the remaining shares held by Laura Ashley Inc. Defendants allegedly agreed to consummate the transaction without notice to Plaintiffs and without their consent in violation of the Shareholders Agreement.

On April 30, 1994, Plaintiffs' terms of employment ended. Plaintiffs claim this lapse in employment contract terminated their employment under terms that entitle them to stock, cash, and various other termination benefits. In May, they sought bonus shares and severance benefits from Revman, which refused to pay at the direction of the other Defendants. Defendants claim that Plaintiffs' termination occurred under circumstances that excused Revman from paying severance benefits.

Plaintiffs are suing Revman, as well as Laura Ashley Inc.,[4] Laura Ashley–UK, JUSCO–USA, and JUSCO–Japan for breach of contract, breach of fiduciary duty, interference with contractual relations, conversion, and various other causes of action. JUSCO–Japan, JUSCO–USA, and Laura Ashley–UK assert lack of *in personam* jurisdiction. Defendants Revman and Laura Ashley Inc. move for a stay of all proceedings pending arbitration of Plaintiffs' claims, pursuant to 9 U.S.C. § 3.[5] The court postponed the per-sonal jurisdiction motion pending resolution of the arbitration issue.

## II. ANALYSIS

■ The Federal Arbitration Act provides: If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The plain words of this section mandate that arbitrability "be decided on an issue-by-issue basis, without regard to the way that the issues are grouped into claims." *Summer Rain v. Donning Co./Publishers,* 964 F.2d 1455, 1460–61 (4th Cir.1992).

Defendants argue that Plaintiffs' basic dispute is arbitrable and that their assertion of thirteen causes of action against five defendants is designed to conceal the arbitrable nature of the dispute. The gist of the Complaint, Defendants argue, is that Defendants deprived Plaintiffs of rights to which they were entitled under their Employment Agreements. Thus, the claims "arise out of" or "relate to" the Agreements and are subject to the Agreement's arbitration clause.

Plaintiffs claim that the arbitration clause in the Employment Agreements cannot govern this dispute, because (1) these claims arise under a separate contract after the Employment Agreements ended, and (2) the claims are outside the scope of the arbitration clause, even if the clause were held to have survived the expiration of the Employ-

---

**3.** No actual change of control occurred until after April 30, 1994.

**4.** Although Plaintiffs named Laura Ashley (U.S.A.) Inc. in their Complaint, Defendants assumed that Plaintiffs intended to name Laura Ashley Inc. According to Defendants, Laura Ashley (U.S.A.) Inc. sold its interest in Revman to Laura Ashley Inc. in August 1993.

**5.** The Defendants who have moved to dismiss the Complaint as against them for lack of *in personam* jurisdiction request to join in the arbitration motion in the event they are subject to jurisdiction. (Def.Mem.Supp.Mot.Stay at 2.)

ment Agreements. (Pls.'Mem.Opp.Mot.Stay at 14.)

■ The court is guided in determining the arbitrability of this dispute by a congressional policy favoring liberal construction of arbitration agreements. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24–25, 103 S.Ct. at 941.

■ A court asked to stay litigation pending compulsory arbitration must engage in a four-step inquiry:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987).

■ Applying the first prong of the test, it is clear from the face of the Employment Agreements that the parties agreed to arbitrate. What is less clear is the scope of that agreement. Plaintiffs argue that this dispute arises out of the Change of Control Agreements and the Shareholders Agreements, but not out of the Employment Agreements. Plaintiffs say the arbitration clause in the Employment Agreements cannot govern issues that arise strictly from these subsequent contracts. This court disagrees with Plaintiffs' framing of the dispute. Plaintiffs' relationships with Revman were founded on the Employment Agreements. The Change of Control Agreements, which Plaintiffs want to govern this dispute, were not meant to displace the Employment Agreements, but rather to supplement them with additional benefits. By the very terms of the Change of Control Agreements, the Employment Agreements remained in effect until the earlier of April 30, 1994 or a change of control, which in fact occurred after April 30, 1994.

Plaintiffs make much ado about Paragraph 12 of the Change of Control Agreements, which provides: "In case of conflict, the provisions of this Agreement shall supersede the conflicting provision of the Employment Agreement." Plaintiffs say the clear omission of an arbitration clause from the Change of Control Agreements conflicts with the continued viability of the arbitration clause from the Employment Agreement. This court disagrees. No term in the Change of Control Agreements presents a conflict with the arbitration clause in the Employment Agreements; thus, nothing in the Change of Control Agreements supersedes the arbitration clause.

In sum, this dispute, whether said to have arisen under the Change of Control Agreement, the Employment Agreement, or some mixture of the two, is within the scope of the arbitration clause contained in the basic employment contract.

■ The third step of the four-step inquiry is irrelevant here, because Plaintiffs assert no federal statutory claims. Under the fourth step, this court must determine whether each of Plaintiffs' claims is arbitrable, and if not, whether to stay litigation of the non-arbitrable ones. As Plaintiffs correctly assert, the determination of whether to stay litigation of non-arbitrable claims "is one left to the district court ... as a matter of discretion to control its docket." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■ Some of Plaintiffs' claims are asserted against parties who are not signatories to the Employment Agreements and thus have not signed arbitration agreements with Plaintiffs. These additional parties, however, do not defeat the arbitrable nature of this entire dispute. The Supreme Court has stated that

"an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Id.* at 20, 103 S.Ct. at 939. Thus, the presence of the nonsignatory Defendants does not defeat the signatory's right to arbitrate the dispute. Furthermore, in this case the nonsignatory Defendants may be included in the arbitration because of their parental status and integral role in the events underlying these claims. The Fourth Circuit has expressed a clear policy in favor of arbitrating claims against non-parties to an arbitration agreement if those claims are based on the same alleged facts underlying claims against a party to the agreement. *See J.J. Ryan & Sons v. Rhone Poulenc Textile,* 863 F.2d 315, 319 (4th Cir.1988). In *J.J. Ryan,* the court rejected the plaintiff's contention that the court below had erred in submitting to arbitration claims against a parent corporation that was not a party to the arbitration agreement, and held that another claim against the parent that the district court had not submitted was also arbitrable. *Id.* at 320–21. In so holding, the court noted:

'When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.... If the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.'

*Id.* at 321 (quoting *Sam Reisfeld & Son Import Co. v. S.A. Eteco,* 530 F.2d 679, 681 (5th Cir.1976)). Here, Plaintiffs' claims against the JUSCO and Laura Ashley Defendants are based on the same allegations as those made against Revman, namely the alleged deprivation of rights relating to the Employment Agreements and Change of Control Agreements. Efficient resolution of the dispute clearly calls for all parties to be involved in one arbitration process.

■ Plaintiffs have also raised claims that are non-contractual in nature, and thus, Plaintiffs assert, non-arbitrable. The presence of these claims, however, also does not defeat arbitration of the dispute. It is not the legal label assigned to a claim but the substance of the underlying allegations that determine whether claims are arbitrable. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 622 n. 9, 624 n. 13, 105 S.Ct. 3346, 3351–52 n. 9, 3352–53 n. 13, 87 L.Ed.2d 444; *J.J. Ryan & Sons v. Rhone Poulenc Textile,* 863 F.2d 315, 319 (4th Cir.1988). The Fourth Circuit reiterated this point recently in *Summer Rain v. Donning Co./Publishers,* 964 F.2d 1455 (4th Cir.1992). In *Summer Rain,* the plaintiffs, a group of authors, sued their publisher and other defendants despite clear agreements to arbitrate. The plaintiffs asserted sixteen causes of action involving a panoply of legal theories, including fraud, conspiracy, conversion, and tortious interference with contractual rights. The court, after reviewing the complaint, found that the "gravamen" of plaintiffs' complaint was nothing more than breach of contract and held that all of plaintiffs' claims were arbitrable, except for certain claims expressly exempted from the arbitration agreement. *Id.* at 1459, 1461. In doing so, the court looked to what was "the heart of the dispute." *Id.* at 1459.

In *J.J. Ryan,* the Fourth Circuit endorsed a district court's decision to look to "the factual allegations underlying the claim ... regardless of the legal label assigned to the claim" in determining arbitrability. *J.J. Ryan,* 863 F.2d at 319. There, all of the plaintiffs' claims—civil conspiracy, unfair trade practices, intentional and tortious interference with contract, conversion, abuse of process, libel, defamation, and injurious falsehood—were found to be arbitrable under distribution agreements, despite the fact that some were tort-based causes of action. *Id.* The court noted the federal policy in favor of arbitration and construed broadly the arbitration clause, saying it "embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.* at 321.

Here, in addition to their explicit breach of contract claims, Plaintiffs expand their allegations to include numerous torts. To be exact, the causes of action are:

*(1 ) Breach of Fiduciary Duty*

*(2 ) Constructive Fraud*

*(3 ) Common Law Fraud*

*(4 ) Negligent Misrepresentation*

*(5 ) Fraudulent Conveyance*

*(6 ) Breach of Contract* [Change of Control Agreement]

*(7 ) Breach of Contract* [Change of Control Agreement] *Accompanied by a Fraudulent Act,*

*(8 ) Intentional Interference with an Existing Contract* [Change of Control Agreement],

*(9 ) Breach of Contract* [Shareholders Agreement] *Accompanied by a Fraudulent Act,*

*(10) Intentional Interference with an Existing Contract* [Employment Agreement],

*(11) Intentional Interference with a Prospective Contract,*

*(12) Conversion* [of the shares and Severance Benefits due Plaintiffs], and

*(13) Civil Conspiracy.*

All of these causes of action arise out of the alleged breach of the various contracts between Plaintiffs and Defendants. For example, the First Cause of Action alleges that, by carrying out a scheme to deprive Plaintiffs of their contractual rights, Defendants breached fiduciary duties owed to Plaintiffs. The Second, Third, and Fourth Causes of Action allege a deprivation of these same contractual rights through fraud and negligent misrepresentation.[6] The Fifth Cause of Action alleges that the sale of Laura Ashley Inc.'s Revman stock to JUSCO–USA with the intent to deprive Plaintiffs of their contractual rights constitutes a fraudulent con-

veyance. The Twelfth Cause of Action alleges Defendants converted to their own use the shares and severance benefits due Plaintiffs under the contracts. The Thirteenth Cause of Action alleges that these various actions of Defendants amount to a conspiracy to deprive Plaintiffs of their contractual rights.

It is clear from these allegations that the "heart of the dispute" is that Defendants deprived Plaintiffs of their claimed rights under their agreements with Revman. Despite their various labels, all of Plaintiffs' claims arise out of or relate to the either Employment Agreements, as amended, or the Change of Control Agreements, which extended the Employment Agreements, and are therefore arbitrable.

## IV. CONCLUSION

It is therefore

**ORDERED** that Defendants' Motion for a Stay of Proceedings Herein Pending Arbitration be **GRANTED** and that the parties inform the court on a monthly basis (beginning February 1, 1995) of the status of the arbitration; it is further

**ORDERED** that Plaintiffs' Ninth Cause of Action be **DISMISSED.**

**AND IT IS SO ORDERED.**

---

**6.** The exact language of the common law fraud cause of action, in part, is as follows:

> The Defendants, intending to deceive Plaintiffs, made certain false representations to the Plaintiffs, including but not limited to, that Plaintiffs would be fully compensated for their employment with Defendants, would receive full value for all interest Plaintiffs held in Revman, and would retain their positions at a level of compensation equal to or greater than their current level, and concealed certain material facts, including, but not limited to, the full consideration paid by Defendant JUSCO–USA

> and the fact that Defendant JUSCO–USA and its affiliates were the primary or sole party that intended to purchase the shares of Defendant Laura Ashley–USA in Defendant Revman.... The Plaintiffs had a right to rely on the said false representations made by Defendants and on Defendants' silence with regard to the matters concealed because of their contractual relationships with Defendants, their position as a shareholder with Defendants, and because of Defendants' privileged position which enable [sic] them to have such information.
> (Compl. ¶¶ 46, 49.)