*4 CHIEF JUSTICE PLEICONES:
We granted certiorari to review a Court of Appeals’ decision affirming a circuit court order which denied petitioner’s (“JWH”) motion to compel arbitration. Parsons v. John Wieland Homes and Neighborhoods of the Carolinas, Inc., Op. No. 2013-UP-296 (S.C. Ct. App. refiled August 28, 2013). We reverse.
FACTS
In 2002, JWH purchased approximately sixty-five acres of land for the development of a residential subdivision. The land was previously utilized as a textile-related industrial site. Following the purchase, JWH demolished and removed all visible evidence of the industrial site and removed various underground pipes, valves, and tanks remaining from the industrial operations.
JWH then began selling lots and “spec” homes on the sixty-five acres. In 2007, respondents (“the Parsons”) executed a purchase agreement to buy a home built and sold by JWH (“the Property”).[1] Paragraph 21 of the purchase agreement for the Property states the purchaser has received and read a copy of the JWH warranty (“Warranty”) and consented to the terms thereof, including, without limitation, the terms of the arbitration clause. The Parsons initialed below the paragraph. Upon executing the purchase agreement, the Parsons were provided a “Homeowner Handbook” containing the Warranty. The arbitration clause is set forth in paragraph O of the Warranty’s General Provisions. The Parsons signed an acknowledgment of receipt of the handbook dated the same date as the purchase agreement.
In 2008, the Parsons discovered PVC pipes and a metal lined concrete box buried on their Property. The PYC pipes and box contained “black sludge,” which tested positive as a hazardous substance. JWH entered a cleanup contract with the South Carolina Department of Health and Environmental *5 Control. JWH completed and paid for the cleanup per the cleanup contract.[2]
The Parsons claim they were unaware the Property was previously an industrial site and contained hazardous substances. In 2011, the Parsons filed the present lawsuit alleging JWH breached the purchase agreement by failing to disclose defects with the Property, selling property that was contaminated, and selling property with known underground pipes. The Parsons further alleged breach of contract, breach of implied warranties, unfair trade practices, negligent misrepresentation, negligence and gross negligence, and fraud.
JWH moved to compel arbitration and dismiss the complaint. The motion asserted that all of the Parsons’ claims arose out of the purchase agreement, and the Parsons clearly agreed that all such disputes would be decided by arbitration. The circuit court denied the motion and found the arbitration clause was unenforceable for two reasons.
First, the circuit court found that because the arbitration clause was located within the Warranty booklet, its scope was limited to claims under the Warranty. The circuit court further found that because the Warranty was limited to claims caused by a defect or deficiency in the design or construction of the home, the Parsons’ claims fell outside the scope of the arbitration clause, and, thus, the arbitration clause was unenforceable.
Second, the circuit court applied the outrageous torts exception to arbitration enforcement[3] and found that because the *6 Parsons alleged outrageous tortious conduct, namely, the intentional and unforeseeable conduct of JWH in failing to disclose concealed contamination on the Property, the arbitration clause was unenforceable.[4]
The Court of Appeals affirmed the circuit court’s finding that the scope of the arbitration clause was restricted to Warranty claims and declined to address the circuit court’s application of the outrageous torts exception doctrine.
We granted JWH’s petition for a writ of certiorari to review the Court of Appeals’ decision.
ISSUE
Did the Court of Appeals err in affirming the circuit court’s ruling that the arbitration clause was unenforceable?
LAW/ANALYSIS
The Court of Appeals found the circuit court correctly determined the arbitration clause was unenforceable. We disagree.
The determination whether a claim is subject to arbitration is reviewed de novo. Gissel v. Hart, 382 S.C. 235, 240, 676 S.E.2d 320, 323 (2009). Nevertheless, a circuit court’s factual findings will not be reversed on appeal if any evidence reasonably supports the findings. Simpson v. MSA of Myrtle Beach, Inc., 373 S.C. 14, 22, 644 S.E.2d 663, 667 (2007) (citing Thornton v. Trident Med. Ctr., L.L.C., 357 S.C. 91, 94, 592 S.E.2d 50, 51 (Ct. App. 2003)).
The policy of the United States and of South Carolina is to favor arbitration of disputes. Zabinski v. Bright Acres Assocs., 346 S.C. 580, 590, 553 S.E.2d 110, 115 (2001). Arbitration is a matter of contract law and general contract principles of state law apply to a court’s evaluation of the enforceability of an arbitration clause. Simpson, 373 S.C. at 24, 644 S.E.2d at 668. (citations omitted).
*7 I. Scope
The Court of Appeals affirmed the trial court’s finding that because the arbitration clause was located within the Warranty, the scope of the arbitration clause was limited to claims covered by the Warranty. We hold the Court of Appeals erred in affirming this finding.
To determine whether an arbitration clause applies to a dispute, a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause. Zabinski, 346 S.C. at 597, 553 S.E.2d at 118 (citing Hinson v. Jusco Co., 868 F.Supp. 145 (D.S.C. 1994); S.C. Pub. Serv. Auth. v. Great W. Coal, 312 S.C. 559, 437 S.E.2d 22 (1993)). The heavy presumption in favor of arbitra-bility requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration. Landers v. Fed. Deposit Ins. Corp., 402 S.C. 100, 109, 739 S.E.2d 209, 213 (2013) (quoting Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 94 (4th Cir. 1996) (quoting Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989))).
Paragraph 21 of the purchase agreement provides, in pertinent part:
21. Warranty and Arbitration. Purchaser and Seller hereby agree that, in connection with the sale contemplated by this agreement, Purchaser will be enrolled in the John Wieland Home and Neighborhoods 5-20 Extended Warranty program, booklet revision date 04/06 (JWH Warranty), the JWH Warranty being incorporated herein by reference .... PURCHASER ACKNOWLEDGES THAT PURCHASER HAS RECEIVED AND READ A COPY OF THE CURRENT JWH WARRANTY AND CONSENTS TO THE TERMS THEREOF, INCLUDING, WITHOUT LIMITATION, THE BINDING ARBITRATION PROVISIONS CONTAINED THEREIN....
(Capitalization, bold, and underline in original).
Paragraph O of the Warranty provides, in pertinent part: Mandatory Binding Arbitration. Wieland and Homebuyer(s) will cooperate with one another in avoiding and informally resolving disputes between them....
*8 Any and all unresolved claims or disputes of any kind or nature between [petitioner] and Homebuyer(s) arising out of or relating in any manner to any purchase agreement with Wieland (if any), this warranty, the Home and/or property on which it is constructed, or otherwise, shall be resolved by final and binding arbitration conducted in accordance with this provision, and such resolution shall be final. This applies only to claims or disputes that arise after the later of: (a) the issuance of the final certificate of the occupancy for the home, or (b) the initial closing of the purchase of the Home by the initial Homebuyer(s). This specifically includes, without limitation, claims related to any representations, promises or warranties alleged to have been made by Wieland or its representatives; rescission of any contract or agreement; any tort; any implied warranties; any personal injury; and any property damage.
[[Image here]]
WIELAND AND HOMEBUYER(S) HEREBY ACKNOWLEDGE AND AGREE THAT THE ARBITRATION PROCEDURE SET FORTH HEREIN SHALL BE THE SOLE AND EXCLUSIVE REMEDY FOR THE RESOLUTION OF ANY AND ALL DISPUTES ARISING AFTER THE INITIAL CLOSING OF THE PURCHASE OF THE HOME BY THE INITIAL HOMEBUYER(S). WIELAND AND HOMEBUYERS HEREBY WAIVE ANY AND ALL OTHER RIGHTS AND REMEDIES AT LAW, IN EQUITY OR OTHERWISE WHICH MIGHT OTHERWISE HAVE BEEN AVAILABLE TO THEM IN CONNECTION WITH ANY SUCH DISPUTES.
(Capitalization, bold, and underline in original).
The plain and unambiguous language of the arbitration clause provides that all claims, including ones based in warranty, be subject to arbitration. Accordingly, we find the Court of Appeals erred in affirming the circuit court’s finding that because the arbitration clause was located within the Warranty, its scope was limited to claims covered by the Warranty. See Jackson Mills, Inc. v. BT Capital Corp., 312 S.C. 400, 403, 440 S.E.2d 877, 879 (1994) (“Arbitration clauses are separable from the contracts in which they are imbedded.” (quoting Prima Paint Corp. v. Flood & Conklin, 388 U.S. 395, 402, 87 *9 S.Ct. 1801, 18 L.Ed.2d 1270 (1967))); see also Zabinski, 346 S.C. at 592, 553 S.E.2d at 116 (finding that like other contracts, arbitration clauses will be enforced in accordance with their terns (citing Volt Info. Scis. Inc. v. Board of Trs., 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989))).
II. Outrageous Torts Exception
In 2007, this Court created the outrageous torts exception doctrine permitting parties whose claims arose out of an opponent’s “outrageous” tortious conduct to avoid arbitration. See generally Aiken v. World Fin. Corp. of South Carolina, 373 S.C. 144, 644 S.E.2d 705 (2007) (establishing, in South Carolina, the outrageous torts exception to arbitration enforcement). The exception established that outrageous torts, which were unforeseeable to the reasonable consumer and legally distinct from the contractual relationship between the parties, were not subject to arbitration. See Aiken, 373 S.C. at 151-52, 644 S.E.2d at 709. While this Court has continued to apply this standalone exception to arbitration enforcement, recent United States Supreme Court precedent requires us to reexamine its viability.
In AT&T Mobility, L.L.C. v. Concepcion, the Supreme Court reiterated its position that “courts must place arbitration agreements on equal footing with other contracts, ... and enforce them according to their terms[.]” 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); Volt Info. Scis, Inc., 489 U.S. at 478, 109 S.Ct. 1248). The Concepcion decision further explained that the Federal Arbitration Act (“FAA”) permits arbitration agreements to be invalidated by “generally applicable contract defenses,” such as fraud, duress, or unconscionability, but not by defenses that apply solely to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.[5] See 131 S.Ct. at 1746 (citing Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (finding courts may not invalidate arbitration agreements under state laws applicable only to arbitration provi *10 sions); Perry v. Thomas, 482 U.S. 488, 492-98, n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (finding state law, whether of legislative or judicial origin, is applicable only if it arose to govern issues concerning contract validity, revocability, and enforceability, and state-law principles that take their meaning from the fact that an arbitration agreement is at issue does not comport with the requirements of the FAA) (citation omitted)); see also Nitro-Lift Techs., L.L.C. v. Howard, — U.S.-, 133 S.Ct. 500, 502, 184 L.Ed.2d 328 (2012) (reiterating that state supreme courts must adhere to United States Supreme Court’s interpretations of the FAA).
The Supreme Court recently reconfirmed the obligation state courts have to apply Concepcion, and ensure arbitration agreements are “on equal footing with all other contracts.” See DIRECTV, Inc. v. Imburgia, — U.S.-, 136 S.Ct. 463, 468, 193 L.Ed.2d 365 (2015) (“No one denies that lower courts must follow this Court’s holding in Concepcion.... Lower court judges are certainly free to note their disagreement with a decision of this Court... But the Supremacy Clause forbids state courts to dissociate themselves from federal law... The Federal Arbitration Act is a law of the United States, and Concepcion is an authoritative interpretation of that Act. Consequently, the judges of every State must follow it.” (citing U.S. Const., Art. VI, cl. 2; Howlett v. Rose, 496 U.S. 356, 371, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); Khan v. State Oil Co., 93 F.3d 1358, 1363-1364 (C.A.7 1996), vacated, 522 U.S. 3, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997))). In finding California state courts failed to meet the requirements set forth in Concepcion, and, therefore, the arbitration agreement at issue was enforceable, the Supreme Court found, in relevant part:
[Sjeveral considerations lead us to conclude that the court’s interpretation of this arbitration contract is unique, restricted to that field.... The language used by the Court of Appeal focused only on arbitration.... Framing that question in such terms, rather than in generally applicable terms, suggests that the Court of Appeal could well have meant that its holding was limited to the specific subject matter of this contract—arbitration.... [Tjhere is no other principle invoked by the Court of Appeal that suggests that California courts would reach the same interpretation of [the phrase at issue] in other contexts.... The fact that we *11 can find no similar case interpreting [the phrase at issue] ... indicates, at the least, that the antidrafter canon would not lead California courts to reach a similar conclusion in similar cases that do not involve arbitration.
DIRECTV, 136 S.Ct. at 469-71 (citing 9 U.S.C. § 2; Buckeye Check Cashing, Inc., 546 U.S. at 443, 126 S.Ct. 1204; Volt Info. Scis, Inc., 489 U.S. at 476, 109 S.Ct. 1248; Perry, 482 U.S. at 493, n.9, 107 S.Ct. 2520).
Analogous to DIRECTV, the application of the outrageous torts exception in South Carolina is “unique,” and “restricted” to the field of arbitration. Comparable to the analysis provided in DIRECTV in finding California courts failed to place arbitration on equal footing with other contracts, the language of every outrageous torts exception case published by this Court has focused explicitly on arbitration. Further, comparable to the analysis in DIRECTV, this Court has never used the terminology associated with, or applied the principle of, the outrageous torts exception outside the context of arbitration enforcement.[6] Because the outrageous torts exception is not a *12 general contract principle, but instead one that has been applied only to arbitration clauses, I find the exception inconsistent with Concepcion and its supporting federal jurisprudence. Accordingly, to the extent South Carolina cases apply the outrageous torts exception, I would now overrule those cases and find the trial court erred by determining the exception precluded enforcement of the arbitration clause.[7]
III. Unconscionability
As an additional sustaining ground, the Parsons ask this Court to find the arbitration clause is unconscionable. Cf. I’On, L.L.C. v. Town of Mt. Pleasant, 338 S.C. 406, 419-20, 526 S.E.2d 716, 723 (2000) (noting the decision to review an additional sustaining ground is discretionary). We find the Parsons’ arguments as to unconscionability are without merit. See Simpson, 373 S.C. at 25, 644 S.E.2d at 668-69 (explaining unconscionability requires courts to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker (citing Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999))); Carolina Care Plan, Inc. v. United HealthCare Servs., Inc., *13 361 S.C. 544, 554, 606 S.E.2d 752, 757 (2004) (citation omitted) (“Unconscionability has been recognized as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them.”).
CONCLUSION
We reverse the Court of Appeals’ decision upholding the circuit court’s finding that because the arbitration clause was located within the Warranty, its scope was limited to the terms of the Warranty. Further, while the majority of this Court finds the outrageous torts exception to arbitration remains viable, I would hold the exception cannot survive in light of Concepcion, 563 U.S. 333, 131 S.Ct. 1740. Finally, we find the Parsons’ unconscionability argument is without merit. Accordingly, we find the Court of Appeals erred in affirming the circuit court’s refusal to enforce the arbitration clause.
The Court of Appeals’ decision is therefore
REVERSED.
KITTREDGE, J., concurs. HEARN, J., concurring in part and dissenting in part in a separate opinion in which BEATTY, J., concurs. Acting Justice Jean H. Toal, dissenting in a separate opinion.

. The Parsons paid $621,102 for the Properly, which was financed by the other defendants named in the lawsuit.

. The cleanup cost JWH approximately $500,000. In addition to the PVC pipes and box, the cleanup revealed a twelve-inch cast iron pipe associated with the prior industrial site running the length of the Property. The cleanup further revealed pipes within the foundation of the Parsons’ home, some of which were unable to be removed; therefore, they were capped and remain on the Property.

. See, e.g., Wachovia Bank, Nat. Ass’n v. Blackburn, 407 S.C. 321, 755 S.E.2d 437 (2014); Timmons v. Starkey, 389 S.C. 375, 698 S.E.2d 809 (2010); Partain v. Upstate Auto. Grp., 386 S.C. 488, 689 S.E.2d 602 (2010); Aiken v. World Fin. Corp. of South Carolina, 373 S.C. 144, 644 S.E.2d 705 (2007); Chassereau v. Global Sun Pools, Inc., 373 S.C. 168, 644 S.E.2d 718 (2007); Simpson v. World Fin. Corp. of South Carolina, 373 S.C. 178, 644 S.E.2d 723 (2007); Hatcher v. Edward D. Jones & Co., L.P., 379 S.C. 549, 666 S.E.2d 294 (Ct. App. 2008).

. We note the circuit court did not explain how the outrageous torts doctrine precluded arbitration of the Parsons’ non-tort claims.

. It is undisputed that the arbitration clause at issue is governed by the FAA.

. The dissent argues the "outrageous and unforeseeable tort exception to arbitration” is a general contract principle but fails to cite any cases outside the realm of arbitration where outrageous and unforeseeable conduct has been applied as an exception to contract enforcement. This exception was created in 2007, and has only been applied not to void a contract itself, but instead to change the forum from arbitration to the courtroom based on the outrageous manner in which the underlying contract was breached. The Concepcion Court specifically addressed the issue of state laws that appear to apply to "any” contract, but in practice have a disproportionate impact on arbitration clauses, and held such disproportionate application "stands as an obstacle to the accomplishment of the FAA’s objectives.” Therefore, if the dissent were correct that the outrageous torts exception is a general contract principle, it is so disproportionately applied in South Carolina that it unquestionably stands as an obstacle to the FAA's cited objectives in violation of Concepcion.
Additionally, the dissent contends our opinion “fails to accurately relay the facts and holding of [.DIRECTV].” To clarify, the second and third sentences of the DIRECTV opinion reveal that the question before the Supreme Court in DIRECTV was decidedly the same question before this Court: “We here consider a California court's refusal to enforce an arbitration provision in a contract. In our view, that decision does not rest ‘upon such grounds as exist ... for the revocation of any contract,' and we consequently set that judgment aside.” See DIRECTV, 136 S.Ct. at 464. Contrary to the dissent’s reliance on one of six grounds provided in DIRECTV regarding how the California courts erred, our opinion *12 relies on the grounds which lend general guidance as to determining whether an arbitration clause is being placed on equal footing with all other contracts. Accordingly, because the DIRECTV analysis we rely upon is not contingent upon the facts, we need not provide a detailed recitation thereof.
In regard to the dissent’s proposition that Kennedy v. Columbia Lumber & Mfg. Co., 299 S.C. 335, 384 S.E.2d 730 (1989), should be extended to arbitration enforcement, nothing in our opinion impacts a homebuyers rights to sue in warranty or in tort, and we refuse to extend the narrow substantive holdings in Kennedy to the issue of arbitration enforcement before the Court in this case.

. We note that JWH argues the Court of Appeals erred by failing to address the trial court’s ruling as to the outrageous torts exception doctrine. Because the Court of Appeals affirmed the circuit court on the scope issue, we find JWH’s argument is without merit. See Futch v. McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (citation omitted) (noting an appellate court need not address remaining issues on appeal when the disposition of a prior issue is dispositive). Further, because we find the circuit court erred in its ruling as to the scope of the arbitration clause, we address the outrageous torts issue without a remand to the Court of Appeals in the interest of judicial economy. See Furtick v. S.C. Dep’t of Prob., Parole & Pardon Servs., 352 S.C. 594, 599, 576 S.E.2d 146, 149 (2003) (addressing the merits of a claim in the interest of judicial economy).