# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Casey Masters, Respondent,

v.

KOL, Inc. d/b/a Kia of Greenville, Appellant.

Appellate Case No. 2017-002259

Appeal From Greenville County
R. Scott Sprouse, Circuit Court Judge

Opinion No. 5746
Submitted May 8, 2020 – Filed July 22, 2020

## REVERSED AND REMANDED

Bradford Neal Martin and Laura Wilcox Howle Teer, of
Bradford Neal Martin & Associates, PA, of Greenville,
for Appellant.

Jason James Andrighetti, of Culbertson Andrighetti,
LLC, of Greenville, for Respondent.

**GEATHERS, J.:** In this breach of contract action, Appellant KOL, Inc. (Dealer) seeks review of the circuit court's order denying its motion to compel arbitration. Dealer argues the circuit court erred by declining to compel arbitration on the ground that Dealer's execution of certain contracts with Respondent Casey Masters (Purchaser) after Purchaser filed this action rendered the parties' April 10, 2017

arbitration agreement moot and unenforceable.  We reverse and remand for an order compelling arbitration.[1]

## FACTS/PROCEDURAL HISTORY

On April 10, 2017, Purchaser and Dealer entered into an agreement for the purchase of a new 2017 Kia Forte at a price of $21,049.  The parties' agreement included Purchaser's $500 down payment and a $5,149 trade-in allowance for Purchaser's 2002 Chevrolet Cavalier.  The purchase order, which was signed by both parties, included a provision allowing the Dealer to cancel the agreement if Dealer was unable to assign any accompanying retail installment sales contract (RISC) to a third-party lender.  This provision also included Purchaser's acknowledgement that (1) Dealer was permitting Purchaser to take "conditional delivery and possession" of the vehicle, i.e., Purchaser's possession of the vehicle was conditioned on Dealer's ability to sell or assign any existing RISC to a third-party lender; (2) any material misrepresentation in Purchaser's credit application would allow Dealer to declare the entire balance under the purchase order immediately due and payable; and (3) "no one at the dealership" coerced Purchaser to provide false information.

Further, a statement near the top of the purchase order's first page indicates in bold, underlined print,

**NOTICE:  THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT ("FAA") 9 U.S.C. § 1, ET SEQ., OR IF AND ONLY IF THE FAA DOES NOT APPLY, THEN PURSUANT TO THE SOUTH CAROLINA UNIFORM ARBITRATION ACT, S.C. CODE ANN. § 15-48-10, ET SEQ.  THE TERMS AND CONDITIONS OF ARBITRATION ARE CONTAINED IN THE DEALERSHIP'S ARBITRATION POLICIES AND PROCEDURES.**

---

[1] We decline to address Purchaser's additional sustaining grounds.  *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("It is within the appellate court's discretion whether to address any additional sustaining grounds.").

The last sentence in the Purchase Order states, "[Purchaser] hereby acknowledges that he/she has thoroughly read this Purchase Order[ and] understands and agrees with its terms, including the fact [that] this agreement is subject to binding arbitration. [Purchaser] has received a completely filled in copy of this order and agreement."

The parties also signed a separate document entitled "Arbitration Agreement," which sets forth the scope of arbitrable claims, the method of selecting an arbitrator, the right to self-help remedies, the location and costs of arbitration, and conditions for seeking a new arbitration. The following language sets forth the scope of arbitrable claims:

> Any claim, counterclaim, third party claim, cross-claim, dispute or controversy between Dealer and [Purchaser], as well as between [Purchaser] and Dealer's employees, agents, affiliate companies or persons, successors and assigns, whether in contract, tort or otherwise, *which arise out of or relate to* [Purchaser's] credit application, purchase, lease, financing, condition of the vehicle, *or any resulting transaction or relationship* (including any such relationship with third parties who do not sign your purchase or finance contract), *or the validity, enforceability, or scope of this Agreement*, shall be resolved by neutral, binding arbitration.

(emphases added). The agreement also includes the following statements: "This Agreement evidences a 'transaction involving commerce' under the Federal Arbitration Act ('FAA'), 9 U.S.C. §§ 1-16[,] and shall be governed by the FAA. If and only if the FAA does not apply, then [this Agreement shall be governed] by any applicable state law concerning arbitration." The agreement also provided that it would "survive the termination of any and all of [Purchaser's] business with Dealer."

According to Purchaser, the parties executed a RISC to finance the purchase, and Dealer attempted to assign its interest in the RISC to Crescent Bank (Crescent). According to Richard Canova, Dealer's Finance and Insurance Manager, Purchaser was aware that completion of the purchase was contingent on "approval of financing." Subsequently, Dealer declined to finance the purchase because Dealer's attempt to assign its interest in the RISC to Crescent failed.

On May 25, 2017, Purchaser filed this action, alleging that Dealer misrepresented her income to Crescent, Crescent would not purchase the RISC, and Dealer breached the RISC. Purchaser also alleged that (1) an employee of Dealer lied to her about a recall of the 2017 Kia Forte; (2) approximately one week later, Dealer refused to return the car to Purchaser when she took it to Dealer for servicing; (3) Dealer rebuffed her demand for the return of her down payment and her trade-in vehicle; (4) Dealer offered Purchaser a loaner vehicle and required her to sign a test drive agreement; and (5) Dealer kept the personal belongings Purchaser had placed in the Kia Forte, including her copy of the RISC, and later returned all of the items except her copy of the RISC.

In her complaint, Purchaser asserted causes of action for breach of contract, breach of contract accompanied by a fraudulent act, fraud, conversion, trespass to chattel, violation of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act (Dealers Act), violation of the South Carolina Unfair Trade Practices Act, violation of the South Carolina Consumer Protection Code, promissory estoppel, violation of the Truth in Lending Act, violation of the Fair Credit Reporting Act, and violation of the Equal Credit Opportunity Act. According to counsel, Purchaser served Dealer with the complaint on June 1, 2017.

According to Dealer, it later found a second lender, Global Lending (Global), to assist in financing the car purchase. The parties executed a second purchase order, a second RISC, and a second arbitration agreement on June 2, 2017—the second purchase order reflects a lower price, $15,456, than that reflected in the first purchase order (a difference of $5,593), but it is otherwise virtually identical to the first purchase order. The second arbitration agreement is identical to the one executed by the parties on April 10, 2017, except for the new date. Although Purchaser has alleged that Dealer did not return the identical Kia Forte to her, the vehicle identification number on both purchase orders is identical.

On July 26, 2017, Dealer filed a motion to stay and to compel arbitration, and the circuit court conducted a hearing on Dealer's motion on August 23, 2017. On that same date, Purchaser filed an affidavit in which she asserted the following: (1) After she filed her complaint, Dealer's representatives told her (a) they would refund her down payment, pay off the loan on her trade-in vehicle, and finance a new car for her; (b) her "new monthly payments would be lower than [her] current monthly payment"; and (c) she had to return "the loaner vehicle" to Dealer; (2) On June 2, 2017, Purchaser returned the loaner to Dealer and "was taken to an office to sign new documents to finance a new vehicle, where [she] learned that [her] down payment would not be refunded that day" and her monthly payments would be

"higher, not lower"; (3) She "was told that [she] had to sign the new contract if [she] wanted a car" and she "felt pressured to sign the documents they gave [her] because [she] had no way of getting home without a car[] and [her] children were with [her]"; (4) Over the next few days, Dealer's representatives notified her that they had given her "the incorrect documents on June 2," she "had to sign new documents," and her down payment refund was available; (5) She "was sick and distressed[] and went to the hospital on June 15 for hives and a severe rash" and her doctor was concerned about her stress level; (6) Dealer's representative continued to call her while she was at the hospital and told her they would return her down payment if she would "sign the new documents"; (7) After leaving the hospital, she signed "the new documents" while she was "under the influence of medicine that affected [her] ability to understand what [she] was doing"; (8) She did not know what she signed, and Dealer did not provide copies of the documents to her; and (9) She told Dealer's representatives that she wanted to speak with counsel first, "but they said they couldn't give [her] the refund check" if she wanted to speak with counsel.

On October 12, 2017, the circuit court filed an order denying Dealer's motion. In its order, the circuit court found that the parties "entered into a second contract for the purchase and financing of a car on or about June 2, 2017" and referenced an assertion that the parties "entered into a third contract regarding the disputes between the parties related to the first two contracts." The court concluded that the "execution of subsequent contracts, as alleged by [Dealer], renders the original agreement and its Arbitration Agreement[] moot and unenforceable." The circuit court later denied Dealer's motion to alter or amend the October 12, 2017 order. This appeal followed.

## ISSUE ON APPEAL

Did the circuit court err by declining to compel arbitration on the ground that the April 2017 arbitration agreement was moot and unenforceable?

## STANDARD OF REVIEW

"Determinations of arbitrability are subject to de novo review, but if any evidence reasonably supports the circuit court's factual findings, this court will not overrule those findings." *Pearson v. Hilton Head Hosp.*, 400 S.C. 281, 286, 733 S.E.2d 597, 599 (Ct. App. 2012).

## LAW/ANALYSIS

Dealer argues the circuit court erred by declining to compel arbitration on the ground that the April 2017 arbitration agreement was moot and unenforceable. We agree.

Initially, we note there is nothing in the record indicating that Purchaser amended her May 2017 complaint, which references only the April transactions, to address the June transactions post-dating the complaint. Also, neither party has claimed that the June transactions formally settled this action. Yet, both the June purchase order and the June arbitration agreement include language that effectively created a novation between the parties. *See Moore v. Weinberg*, 373 S.C. 209, 217, 644 S.E.2d 740, 744 (Ct. App. 2007) ("A novation is an agreement between all parties concerned for the substitution of a new obligation between the parties with the intent to extinguish the old obligation." (quoting *Wayne Dalton Corp. v. Acme Doors, Inc.*, 302 S.C. 93, 96, 394 S.E.2d 5, 7 (Ct. App. 1990))), *aff'd*, 383 S.C. 583, 681 S.E.2d 875 (2009). The June purchase order, like the April purchase order, includes the following language:

> This Purchase Order represents the *final* agreement between the parties related to the sale of the vehicle and *may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties*. Any Retail Installment Contract or other document executed by [Purchaser] in connection herewith is simply a means of satisfying [Purchaser's] obligations under this Purchase Order.

(emphases added). *Cf. Burgess v. Jim Walter Homes, Inc.*, 588 S.E.2d 575, 578 (N.C. Ct. App. 2003) (holding the parties entered into a novation when their 1999 contract superseded their 1997 contract through the use of the following language: "'This Building Contract, promissory note, deed of trust and the contract documents executed herewith *constitute the entire agreement* between the parties hereto with respect to the transactions contemplated herein, and this Building Contract promissory note, deed of trust and *the contract documents supersede all prior oral or written agreements, commitments or understandings* with respect to the matters provided for herein'"). Further, the June 2 arbitration agreement, like the April 10 arbitration agreement, states, "This Agreement constitutes the *entire* agreement of the parties with respect to its subject matter, is agreed to be the last Agreement entered into with respect to its subject matter, and *supersedes all prior discussions, arrangements, negotiations and other communications*, if any, on dispute resolution." (emphases added).

In its order, the circuit court found that the parties "entered into a second contract for the purchase and financing of a car on or about June 2, 2017" and referenced an **assertion** that the parties "entered into a third contract regarding the disputes between the parties related to the first two contracts,"[2] attributing the assertion to Dealer.[3]  The court concluded that the "execution of subsequent contracts, as alleged by [Dealer], renders the original agreement and its Arbitration Agreement[] moot and unenforceable."  Because the circuit court's reasoning is obscure, we can only guess that the parties' novation served as the basis for the circuit court's conclusion that the "original agreement" and the April arbitration agreement, as opposed to the entire action, were moot and unenforceable.[4]  We find this to be an incongruent, hyper-technical approach to resolving what may be left of the parties' dispute.[5]  We conclude the correct approach is to compel arbitration.

"The policy of the United States and of South Carolina is to favor arbitration of disputes." *Parsons v. John Wieland Homes & Neighborhoods of the Carolinas, Inc.*, 418 S.C. 1, 6, 791 S.E.2d 128, 131 (2016).  Therefore, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).[6]

---

[2] We see no evidence in the record of any such contract.

[3] The record shows that Purchaser's counsel, rather than Dealer, made this assertion, and he characterized this "third contract" as a release of Dealer from any liability to Purchaser.

[4] *See S.C. Ret. Sys. Inv. Comm'n v. Loftis*, 402 S.C. 382, 384, 741 S.E.2d 757, 758 (2013) ("A *case* is moot where a judgment rendered by the [c]ourt will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the [c]ourt.  Where there is no actual controversy, this [c]ourt will not decide moot or academic questions." (emphasis added) (citations omitted)); *see also* Moot, Black's Law Dictionary (11th ed. 2019) ("moot adj. (16c) 1. *Archaic*. Open to argument; debatable.  2. Having no practical significance; hypothetical or academic <the question on appeal became moot once the parties settled their case>."); Merriam-Webster Online Dictionary, *Moot*, https://www.merriam-webster.com/dictionary/moot (April 15, 2020) ("1 a : open to question : debatable b : subjected to discussion : disputed 2 : deprived of practical significance : made abstract or purely academic").

[5] We express no opinion on the merits of any cause of action that may have survived the parties' novation.

[6] The Federal Arbitration Act (FAA) provides, in pertinent part, that a written provision in any "contract evidencing a transaction involving commerce to settle by

Here, the scope of both the first and second arbitration agreements covers not only their respective accompanying purchase orders and RISCs but also any resulting transactions or relationships:

> Any claim, counterclaim, third party claim, cross-claim, dispute or controversy between Dealer and [Purchaser], as well as between [Purchaser] and Dealer's employees, agents, affiliate companies or persons, successors and assigns, whether in contract, tort or otherwise, which arise out of or relate to [Purchaser's] credit application, purchase, lease, financing, condition of the vehicle, *or any resulting transaction or relationship* (including any such relationship with third parties who do not sign your purchase or finance contract), or the validity, enforceability, or scope of this Agreement, shall be resolved by neutral, binding arbitration.

(emphasis added).[7]  On the force of this provision alone, the April 2017 arbitration agreement applies to any cause of action in the present case that may have survived

arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (2018). "Unless the parties have contracted to the contrary, the FAA applies in federal or state court to any arbitration agreement regarding a transaction that in fact involves interstate commerce, regardless of whether or not the parties contemplated an interstate transaction."  *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 538, 542 S.E.2d 360, 363 (2001) (footnote omitted).  Here, the parties' transaction involved the sale and financing of an automobile.  Therefore, it involved interstate commerce and is governed by the FAA.  *See United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005) (identifying automobiles as instrumentalities of interstate commerce, which are subject to regulation by Congress) (cited in *Cape Romain Contractors, Inc. v. Wando E., LLC*, 405 S.C. 115, 122, 747 S.E.2d 461, 464 (2013)); *Landers v. Fed. Deposit Ins. Corp.*, 402 S.C. 100, 108, 739 S.E.2d 209, 213 (2013) ("Generally, any arbitration agreement affecting interstate commerce . . . is subject to the FAA." (citing 9 U.S.C. § 2)).

[7] "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation and '[a] party cannot be required to submit to arbitration any dispute [that] he has not agreed so to submit.'"  *Landers*, 402 S.C. at 108, 739 S.E.2d at 213

the novation to the extent that the June 2017 arbitration agreement does not apply. *See Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.*, 268 S.C. 80, 89, 232 S.E.2d 20, 25 (1977) ("The purpose of all rules of contract construction is to determine the parties' intention. The courts, in attempting to ascertain this intention, will endeavor to determine the situation of the parties, as well as their purposes, *at the time the contract was entered into*. The court should put itself, as best it can, in the same position occupied by the parties *when they made the contract*. In doing so, the court is able to avail itself of the same light [that] the parties possessed when the agreement was entered into so that it may judge the meaning of the words and the correct application of the language." (emphases added) (citation omitted)); *U.S.*

_____

(quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996)). Nonetheless, while the parties' intent is "relevant," it bears repeating that "as a matter of policy, arbitration agreements are liberally construed in favor of arbitrability." *Id.* at 108–09, 739 S.E.2d at 213. This "'*heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration*.'" *Id.* at 109, 739 S.E.2d at 213 (emphasis added) (quoting *Am. Recovery*, 96 F.3d at 94).

Moreover, "[s]uch a presumption is strengthened when an arbitration clause is broadly written." *Id.* "Therefore, 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute[,]' arbitration must generally be ordered." *Id.* (quoting *Am. Recovery*, 96 F.3d at 92). For example, "[a] clause [that] provides for arbitration of all disputes 'arising out of or relating to' the contract is construed broadly." *Id.* "Courts have held that such broad clauses are 'capable of an expansive reach.'" *Id.* at 109, 739 S.E.2d at 214 (quoting *Am. Recovery*, 96 F.3d at 93).

Our supreme court and the Fourth Circuit Court of Appeals have held that sweeping language in broad arbitration clauses "applies to disputes in which a significant relationship exists between the asserted claims and the contract in which the arbitration clause is contained." *Id.* "Thus, the scope of the clause does 'not limit arbitration to the literal interpretation or performance of the contract*[, but] embraces every dispute between the parties having a significant relationship to the contract*.'" *Id.* at 109–10, 739 S.E.2d at 214 (emphasis added) (quoting *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988)). "In applying this standard, th[e appellate c]ourt 'must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, *regardless of the legal label assigned to the claim*.'" *Id.* (emphasis added) (quoting *J.J. Ryan & Sons*, 863 F.2d at 319).

*Bank Tr. Nat. Ass'n v. Bell*, 385 S.C. 364, 374, 684 S.E.2d 199, 205 (Ct. App. 2009) ("To give effect to the parties' intentions, the court will endeavor to determine the situation of the parties and their purposes *at the time the contract was entered*." (emphasis added)).

Further, both arbitration agreements provide that they "shall survive the termination of any and all of [Purchaser's] business with Dealer." This language expresses the parties' intent to retain the option of arbitration even after an event such as Purchaser's completion of all installment payments or Dealer's transfer of its right to collect payments to a third party. A novation of the underlying contract cannot nullify such an agreement. *See* 30 *Williston on Contracts* § 76:46 (4th ed.) ("[T]he parties may include within the original contract a provision that they intend to survive the termination of the contract, such as an arbitration clause; in such a case, the provision will survive not only the termination of the agreement, but also its novation and the substitution of a new contract."); *id.* at § 76:47 ("[A]n arbitration clause or other remedy contained in the original contract that the parties expressly agree will survive termination of the agreement will survive a novation as well, though such a clause has been held applicable only to issues arising in connection with the original contract, and not to affect the remedies of the parties arising from the subsequent agreement.").

Based on the foregoing, the parties' April 2017 arbitration agreement is neither moot nor unenforceable.

Finally, we note that both the first and second arbitration agreements express the parties' intent that even the **enforceability** of these arbitration agreements must be determined by an arbitrator, and Purchaser has not asserted a specific challenge to this particular provision:

> Any claim, counterclaim, third party claim, cross-claim, dispute or controversy between Dealer and [Purchaser], as well as between [Purchaser] and Dealer's employees, agents, affiliate companies or persons, successors and assigns, whether in contract, tort or otherwise, which arise out of or relate to [Purchaser's] credit application, purchase, lease, financing, condition of the vehicle, or any resulting transaction or relationship (including any such relationship with third parties who do not sign your purchase or finance contract), *or the validity,*

*enforceability, or scope of this Agreement*, shall be resolved by neutral, binding arbitration.

(emphasis added).  Thus, even the question of whether the June 2017 transactions rendered the April 2017 arbitration agreement "moot and unenforceable" was a question for an arbitrator to resolve.  *See Landers*, 402 S.C. at 107, 739 S.E.2d at 213 ("The question of arbitrability of a claim is an issue for judicial determination *unless the parties provide otherwise*." (emphasis added) (quoting *Partain v. Upstate Auto. Grp.*, 386 S.C. 488, 491, 689 S.E.2d 602, 603 (2010))); *see also New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019) ("A delegation clause gives an arbitrator authority to decide even the initial question [of] whether the parties' dispute is subject to arbitration."); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69, 69 n.1 (2010) (stating that parties "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" provided that courts not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they intended to arbitrate these gateway questions); *In re Little*, 610 B.R. 558, 565 (Bankr. D.S.C. 2020) ("[W]hile it is the default procedure for the court to decide [the issues of whether a valid agreement to arbitrate exists and whether the specific dispute falls within the agreement's scope], the parties may delegate this determination to an arbitrator if the parties clearly and unmistakably agree to do so in their arbitration agreement."); *Rent-A-Ctr.*, 561 U.S. at 72 (concluding that unless the delegation provision is challenged specifically, the court must treat it as valid and enforce it, leaving any challenge to the validity of the arbitration agreement **as a whole** for the arbitrator).  Therefore, the circuit court should have reserved any question concerning the enforceability of the arbitration agreements for an arbitrator.

## CONCLUSION

Accordingly, we reverse the circuit court's order and remand for an order compelling arbitration.

**REVERSED AND REMANDED.**[8]

**LOCKEMY, C.J., and HEWITT, J., concur.**

---

[8] We decide this case without oral argument pursuant to Rule 215, SCACR.